**Clyde W. KING, Jr.**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare.**

Civ. A. No. 5068.

United States District Court
E. D. Tennessee, N. D.

Feb. 26, 1965.

Gilreath & Brown, Knoxville, Tenn., for plaintiff.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

This action was filed to obtain review of a decision of the Secretary of Health, Education and Welfare on a claim for social security disability benefits, pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)).

Each party has filed a motion for summary judgment.

This case is one of first impression and raises the question whether a man who is subject to epileptic seizures at approximately six to eight week intervals is disabled within the meaning of the Act.

Claimant was born March 19, 1925 and has completed approximately 12 grades in school. Around 1940, he became aware of his affliction. His longest period of employment was approximately 15 years with the produce division of the A & P Grocery chain. In 1953, he married and has three children under the age of eighteen. Shortly prior to the hearing he was divorced by his wife and is now living with his mother and supports his children now in the custody of his wife. It now appears that she has remarried and that the children may come to live with him. He had a short period of employment of a few months at Jefferson City Cabinet Company stitching boxes but had a seizure and was discharged because of the objection of the insurance company. He had a short term of a few months in 1950 with the army or the Tennessee National Guard, the record is not clear as to which, but he did have a couple of seizures during this service and was hospitalized in military hospitals after he received his discharge in December, 1950.

Plaintiff's work has primarily been at hard labor in the produce division of the A & P Company and in handling bananas, storing fruits and vegetables in cold storage freezers, etc., for other companies for short periods since that time. Part of the time he worked at the A. G. Boone Company which had a contract with A & P for loading big tractors and trailers. Between 1960 and 1963 he worked for other produce companies handling fruit and loading trucks, this latter mostly at the Western Avenue Market in Knoxville, Tennessee.

Plaintiff's earnings record indicates that he had earnings of $2,000.00 per year between 1953 and 1957; in excess of $1,000.00 per year between 1958 and 1961 and that his highest earnings, over $3,000.00, were reported for the year 1962 and since that time he has worked "a little off and on for different fellows on the market."

Plaintiff is approximately five feet seven inches tall and normally seemed to have weighed around 175 pounds, although he was weighing in the 190's at the time of his hearing.

While married, he and his wife enjoyed square dancing and roller skating. He drives an automobile and testified that he drives approximately 50 miles a week, but that he does not drive when he has warning that a seizure may be coming on.

He has been under the care of Dr. Edward S. Clayton since 1954, who reported in July, 1963 that he has been under continuous medication since June of 1954, the most recent medication being dilantin.

In a report dated February 25, 1961, Dr. Clayton indicated that claimant had not worked since April, 1960 but that he felt claimant was capable of handling monthly benefit funds. However, the record shows that he had been more or less regularly employed since the first report and prior to the second report of July 2, 1963 of Dr. Clayton. In this second report, Dr. Clayton said:

"This man has been a patient since June 1954 he has a history of having epileptic seizures since age 15. He has stated he has tried to work but on every job he obtains he has an attack and is let go. He is now unable to obtain gainful employment because of his seizures. The present attacks are occurring approximately every six weeks to two months. Grand Mal type seizure. Last regu-

lar employment terminated 3–19–63."

The record indicated that when he was working with men who knew him at the produce companies that they would help him during one of the seizures but that difficulties arose when the insurance companies carrying insurance for his employers found out about his condition and that because of pressure from the insurance companies he was not able to hold regular employment. Claimant indicates that he feels unfit to work because he was discharged from both a civil service job (nature unknown) and military service and that he feels the Government has already determined that he is unfit to work. He states that he takes dilantin when he can afford it and notices the effects when he does not take it and that when he doesn't take it his head spins like he was a drunk man.

Quoting:

" * * * It's on account of those that I'm not working regular for anyone. When they find out I do have them I'm just—the insurance company tells them that they have to get rid of me or cancel their insurance. It's like the Navy Civil Service. * * * "

He would obtain work for a few weeks or possibly a few months at a time, but no one employed him regularly. He spent practically his whole working years in the handling of produce and seemed to be strong and quite capable of doing the heavy work and minor paper work involved. Only three weeks prior to the hearing on January 3, 1964, he obtained a few days work at the Western Avenue Market but had to give it up because of a seizure.

The Examiner found that the claimant had not established that his impairments either singularly or in combination, were of such severity as to preclude him from engaging in substantial gainful activity at any time for which his application of June 28, 1963 was effective and ruled that he was not entitled to disability insurance benefits or to a period of disability under Section 223(a) and 216(i) of the Social Security Act, as amended.

The Appeals Council on March 30, 1964 denied his request for a review.

The Hearing Examiner pointed out, however, that claimant had special insured status for entitlement to disability benefits through the quarter ending September 30, 1966 and that if his impairments increased in severity before that date, he was entitled to reapply for disability benefits.

There is no real dispute as to the facts. The question seems to be whether an otherwise vigorous and able-bodied man approximately 40 years old but who is subject to fairly regular epileptic seizures (grand mal) who is willing to work, and most of the time is able to work, but who has difficulty obtaining continuous employment because of his affliction and because of the opposition of companies insuring his employers, is disabled within the meaning of the Act. There are no cases precisely in point.

Section 223(c) (2) of the Social Security Act defines disability as " * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

Section 216(i) (2) provides that the term "period of disability" means a continuous period of not less than six full calendar months during which an individual was under a disability. From the evidence it is clear that plaintiff does not suffer sustained periods of disability. During the great majority of his days he is able and willing to work but has short periods of a day or two at a time when his good health is interrupted and he is unable to perform his duties. His medical and work records do not seem to bring him within the definition of Section 223(c) (2). He is not unable to engage in substantial gainful activity by reason of a medically determinable physical impairment. He is able for long periods at a time to do hard physical

work and visits the Western Avenue Market almost daily in the hope of picking up work which he does with some regularity.

The difficulty in this case is the humanitarian one. Claimant cannot find continuous employment because of the occasional interruptions to his good health and capabilities. He is forced to carry the double burden of an affliction and the hostility of the employers and the insurance companies, because of his affliction, to keeping him on their payroll. It is a difficult situation, but one which does not seem to be covered by the present disability provisions of the Social Security Act and one that can only be relieved by additional legislation. King v. Celebrezze, 341 F.2d 108 (C.A.6, decided February 8, 1965); Banks v. Celebrezze, 341 F.2d 801 (C.A.6, decided February 20, 1965.)

The holding of the Secretary is affirmed.