Frank T. **HUNLEY**

v.

Wilbur J. **COHEN**, Secretary of Health, Education and Welfare.

Civ. A. No. 6275.

United States District Court
E. D. Tennessee, N. D.
Aug. 15, 1968.

Hugh W. Morgan, Knoxville, Tenn., for plaintiff.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is a petition to review the final decision of the Secretary of Health, Education and Welfare which approved the decision of the Hearing Examiner denying that plaintiff was under a disability as defined by the Social Security Act either before or after the 1967 Amendments. Plaintiff meets the special earnings requirements at least through December 31, 1970.

He was born on July 30, 1923, and testified that he had a fifth grade education. He has had various jobs ranging from manual labor to supervisory work. Some of his jobs have been lumberyard work, drill press operator, assembly line work for General Motors, and finally work as a maintenance man in a supervisory position in San Diego, California.

He filed his initial application for disability benefits on October 17, 1966, alleging disability from June 6, 1966. His chief complaints were diabetes, arthritis, and a possible heart condition. He testified that he suffered a heart attack in 1965, and blackouts due to insulin reactions. He is presently taking eight different types of medicine in addition to insulin.

He was contacted by an Administration official on October 17, 1966, and stated that he went into a diabetic coma in 1957 and has been on insulin since that time. He had to give up work because of dizzy spells. At the interview he exhibited no difficulty in walking or in the use of his hands and arms.

In another contact report dated February 16 and 17, 1967, it is stated that he sees a doctor once or twice a week, and that the doctor wanted to increase his insulin but plaintiff refused because of fear of insulin shock. The doctor told him to stay on his diet and take his medicine, but did not advise him not to work or restrict him in any way. He is able to shower and dress without aid, and cleans around his bed as well as making it up. He continues to perform Class II duties at the VA Center, including carrying folders to doctors and stamping papers.

Doctor Roscoe S. Pryse, general practitioner, has been seeing him since July, 1966. On October 17, 1966, Dr. Pryse diagnosed diabetes mellitus, arthritis,

schizophrenia, hypertension, and arteriosclerotic heart disease (ASHD). It is noted that Dr. Pryse made no clinical tests and found plaintiff essentially normal except for an irregular heart and appearing nervous and shaky.

A Veterans Administration Hospital report, signed by Dr. Martin Kerlan, stated that he was admitted on August 9, 1966, and discharged on September 28, 1966. He was suffering from a carbuncle which healed in about one month, and an abscessed finger which healed in about three weeks. His diabetes was under moderate control.

In an Interval Note dated March 6, 1967, and signed by Dr. A. D. Doak, it it stated that he continues to run hyperglycemia and glycosuria. The blood sugars vary from 90 mgs. % to 477 mgs. %.

Doctor George H. Brown examined his chest, spine, hands and knees. All bone structures were normal and no evidence of arthritis was found. However, Dr. Brown did find arteriosclerosis.

Doctor E. K. Distler examined him in 1964 and 1965 and stated that he was a severe brittle diabetic, but that his diabetes and hypertension responded well when he was under active control. Dr. Distler also noted that plaintiff was a chronic alcoholic and smoker.

A psychiatric examination performed by Dr. Albert E. Osejo, psychiatrist, revealed that his mental status was within normal limits and that he was not unduly depressed or elated. He was advised to cooperate with his doctor in controlling his diabetes by staying on his diet.

He was seen on December 30, 1966 by Dr. J. C. Blevins, internal medicine. Dr. Belvins' report reveals that he was first hospitalized for diabetes in 1957 and has been in the hospital several times for insulin over-dosage. He also claims to have had several episodes of arthritis over the past nineteen years. He also stated that he smoked but did not drink.

A physical examination showed his blood pressure normal, heart normal, and motion good in all of the extremity joints. The neurological examination was not remarkable.

After extensive laboratory tests, Dr. Blevins felt that the diabetes was under fair control and that it does not cause him "appreciable difficulty at this time, but at a later date he will have complications." He felt that there was no end organ damage, and that plaintiff had not adhered closely to a diabetic regimen.

Doctor Walter D. Hankins performed a chest X-ray and found a small area of fibrosis and calcification which was the result of an old pleurisy. All else was normal.

An electrocardiograph revealed his heart to be within normal limits.

A report from the Veterans Administration Hospital indicates that he underwent insulin shocks on June 10, 1967 and July 3, 1967. He was also rated permanently and totally disabled by the Veterans Administration on October 26, 1967.

A letter received from Dr. Pryse dated January 31, 1968 stated that his diabetes was uncontrollable and that he was "permanently disabled from earning his support by manual labor and is unable to be relied upon for hire."

The issue is whether there is substantial evidence to uphold the findings of the Hearing Examiner that plaintiff is not disabled from engaging in substantial gainful activity as defined by the Social Security Act.

Disability is defined at 42 U.S.C. §§ 416(i) and 423 as:

"* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months * * *."

Title 42 U.S.C. § 423(d) (2) (A) further provides:

"(A.) an individual (except a widow, surviving divorced wife, or widower for purposes of section 402(e) or (f) of this title) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

Finally, 42 U.S.C. § 423(d) (3) states:

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

■■ As is generally the case in a social security review, there is a conflict in the medical evidence. While it is true that more weight must be given to the opinion of claimant's personal physician, Combs v. Gardner, 382 F.2d 949 (C.A. 6, 1967), it is also true that statements of general practitioners must give way to the results of medical and clinical tests. Bailey v. Gardner, 269 F.Supp. 100, 107–108 (S.D.W.Va., 1967). The causes of conditions such as plaintiff alleges are not so difficult to detect and so elusive that a specialist who sees him only one time may fail to discover them. The findings of a specialist where supported by extensive laboratory tests, while not conclusive, are entitled to substantial weight. See Walters v. Gardner, 383 F.2d 922 (C.A. 6, June 28, 1968).

Doctor Pryse concluded that plaintiff was suffering from schizophrenia and a heart disease without any supporting data whatever. These findings are contradicted by Dr. Osejo, a psychiatrist, and by Dr. Blevins who found after performing an electrocardiogram while resting and after a Masters Two Step exercise that his heart was normal.

Doctor Pryse also stated that he was suffering from "arthritis generalized" but did not support this with any clinical data. He is contradicted by Dr. Brown who submitted a radiographic report which indicated that there was no arthritis. Dr. Blevins performed a latex fixation test for rheumatoid arthritis and found it non-reactive.

■ Moreover, this conflict in the evidence was for the Secretary and not the Court to decide. Lane v. Gardner, 374 F.2d 612 (C.A. 6, 1967); Bailey v. Gardner, 368 F.2d 841 (C.A. 6, 1966); Walters v. Gardner, supra.

Doctor Norman E. Hankins testified as a vocational expert. Among other qualifications he has helped make rehabilitation vocational evaluations for the Tennessee State Rehabilitation Office. "These clients suffered from moderately severe to severe physical and emotional disabilities including orthopedic, epileptic, schizophrenic and other mental disorders, cerebral palsy, and diabetes."

At the hearing, Dr. Hankins listed many jobs in the Johnson City area which he felt plaintiff might qualify for and which would not be manual labor. Dr. Hankins also felt that he could still engage in maintenance work, which was his previous employment prior to the alleged disability.

Plaintiff attacks Dr. Hankins' testimony as mere suppositions, and feels that the Examiner put words in his mouth by using leading questions. He also feels that he must have more than theoretical job opportunities; that he must

have a practical, reasonable opportunity to work.

 As previously pointed out, according to the 1967 Amendments a job need only exist in the national economy, and a vacancy need not be open. Furthermore, it makes no difference whether or not a claimant would be hired or not if he could do the job. The Sixth Circuit has followed this language in the recent cases of Lewis .v. Gardner, 396 F.2d 436, decided June 8, 1968, and Mullins v. Gardner, 396 F.2d 139, decided June 7, 1968.

 While it is true that the Examiner may have tried overly hard to bring out Dr. Hankins' testimony in a certain way, it must be remembered that a hearing under the Social Security Act is informal and the rules of evidence which apply in a court of law do not apply there. Furthermore, the Court is of the opinion that the Examiner also brought out adverse testimony concerning the difficulty plaintiff might have in obtaining employment.

 Plaintiff contends that the Veterans Administration's rating of permanent and total disability should be of great weight in deciding this case. The courts have held that while such a rating must be considered by the Secretary, it is not controlling. Moon v. Celebrezze, 340 F.2d 926 (C.A. 7, 1965); Celebrezze v. Bolas, 316 F.2d 498 (C.A. 8, 1963); Johns v. Celebrezze, 272 F.Supp. 533 (M.D.Tenn., 1967).

King v. Celebrezze, 240 F.Supp. 177 (E.D.Tenn., 1965), affirmed 370 F.2d 652 (C.A. 6, 1967) appears similar to the present case. In *King,* claimant suffered from epileptic seizures at approximately six to eight week intervals. He could not keep permanent employment because the companies that insured the employers refused to let him work. In the present case plaintiff suffers from insulin shock on occasion, but during the great majority of days he is able to work. Under the recent Amendments it is not controlling that he would not be hired even if he applied for the job.

 Considering the entire record including the reports of Dr. Pryse and the Veterans Administration, the Court is of the opinion that there is substantial evidence to uphold the findings and conclusions of the Secretary.