Donald E. **MOYER**, Plaintiff,

v.

**SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE, Defendant.**

No. 1688.

United States District Court,
E. D. Kentucky,
Covington Division.

March 6, 1974.

Robert F. Reed, Cincinnati, Ohio, Albert C. Hawes, Covington, Ky., for plaintiff.

Eugene E. Siler, Jr., U. S. Atty., by Robert M. Murphy, Asst. U. S. Atty., Lexington, Ky., for defendant.

### MEMORANDUM

SWINFORD, District Judge.

The plaintiff, Donald E. Moyer, brings this action under the provisions of 42 U.S.C. § 405(g). On December 2, 1970, he filed an application for disability benefits in which his disability was listed as "Back, Arm & legs injury in truck wreck". He stated that he became unable to work because of these impairments on June 10, 1965. The record also discloses that an application for disability benefits was filed on May 23, 1969, by Mr. Moyer in which his disability was listed as "Back Injury, Diabetes, Lung trouble". In this application the date of disability was also given as June 10, 1965. This application was denied on August 8, 1969, but no request for reconsideration was made.

The application of December 2, 1970, was denied initially and upon reconsid-

eration. The plaintiff then requested a hearing, which was held on January 20, 1972. He appeared and testified on that date and the hearing examiner's decision, in which benefits were denied, was made on January 26, 1972. On March 27, 1972, the Appeals Council concluded that the decision of the hearing examiner was correct and it thus became the final decision of the Secretary. This action was timely filed on April 21, 1972.

The record is now before the court on the motions for summary judgment filed by the defendant and plaintiff, respectively. Briefs have been filed by the parties and a transcript of the proceedings had in connection with the plaintiff's claim was filed as a part of the defendant's answer.

The plaintiff is now fifty-four years of age and will be fifty-five on May 28. He is married and lives with his wife and two teen-age childen at Highland Heights, Kentucky. He has a sixth grade education and has worked on a farm and as a truck driver. For a few months in 1950 he operated a gas station—"Just gas and oil"—and then returned to his work as a truck driver. His last job was with the Ohio Delivery Company of Cincinnati, Ohio. He stated that he worked for that company fourteen or fifteen years. (Tr. 37)

On June 8, 1965, while engaged in his employment as a truck driver, another truck ran into his truck from the rear. In Dr. Robert McDevitt's report of November 5, 1970, under "History", the following account is given of this accident:

"According to Mr. Moyer he was injured in a rear-end truck collision while driving for the Ohio Valley Truck Company delivering a load of oil in cases to Akron. According to him another truck ran into the back of him and he said 'the driver must have been doing 80mph'. This occurred at about 7:30 in the morning and the driver of the truck who hit him was instantly killed. He recalls getting out and seeing the man very badly mangled from the wreck but denies this causing a great emotional impact.

After the accident he was shaken up but was able to drive his tractor back to his depot. It was only the next morning that he awakened stiff all over and unable to move. He claims that this condition has continued with marked weakness in both arms and legs and marked stiffness in the morning in order to get moving and then he has to take a rest in the afternoon. He is unable to (illegible) himself and claims he is unable to return to his previous line of duties." (Tr. 160—Exhibit 22)

The day following the accident he was treated by his regular physician, Dr. Giles A. DeCourcy, and testified that it was Dr. DeCourcy's opinion at that time that "I would be all right, he thought." (Tr. 36). However, since the accident, the plaintiff has not been employed. He says he was forced to quit his job because of pain in his lower back and across his shoulders; that he can't lift and that he gets weak in his legs when he walks over two or three blocks. He draws workmen's compensation for total disability and sees Dr. DeCourcy every week. He takes pain medication three times a day, nerve medication twice a day, and is on diabetic medication. (Tr. 55). It was his testimony that he could not do a job for an eight hour period—regardless of what the job was—even light work, because he couldn't "stay up that long". (Tr. 58).

Dr. Giles DeCourcy of Cincinnati, Ohio, has been the plaintiff's treating physician for several years. Exhibit No. 18 (Tr. 146) is a report of Dr. DeCourcy's treatment of the plaintiff from June 11, 1965, to December 4, 1970. His diagnosis and findings are:

"Traumatic injury to the spine involving Cervical to Lumbar and affecting both Bilateral Efferent & afferent nerves. His outstanding symptoms are pain and weakness.

He's completely changed his personality since I knew him before the accident. He was an ambitious—enthusiastic worker and his failure to regain even his normal personality—he

is discouraged and the constant pain gives him great concern." (Tr. 147).

In his opinion the plaintiff "is totally and permanently unable to work." (Tr. 148).

Dr. S. Marcus Wigser, a neurological surgeon of Cincinnati, Ohio, examined the plaintiff on or about February 11, 1971. He states that

"(O)n neurological examination his tricep jerks are absent bilaterally. Other upper extremity reflexes are normal. Knee and ankle jerks are normal. Straight leg raising is not limited. Cervical spine motions are not limited, but the patient experiences pain with forward flexion of the head on the neck, as well as with rotation of head on the neck. Cranial nerve examination is normal. This patient's neurological examination was normal except for bilateral absence of the triceps jerk." (Tr. 150).

Dr. K. E. Lanter, a psychiatrist of Erlanger, Kentucky, examined the plaintiff on February 22, 1971. His report, Exhibit No. 20 (Tr. 153) gives the following diagnosis:

"1) CONVERSION REACTION
000–X03

2) DEPRESSIVE REACTION
000–X06

3) ANXIETY REACTION
000–X01" (Tr. 154).

An apparent coding of these impairments as to severity is meaningless to the court, and, while there was medical testimony on this point (Tr. 60–63), it is of little value in determining the extent of the plaintiff's disability.

Dr. Ralph G. Carothers, an orthopedic surgeon of Cincinnati, examined the plaintiff in July of 1969. After setting forth the details of his examination, he concludes his report as follows:

"In discussing the matter with this man he does have several things the matter with him, namely the diabetes, which is under control, I believe with medicine and diet and the pneumonitis which is not bothering him particu-

larly right now and the back pains. He feels that leaving out the diabetes and leaving out the chest business that just on account of the back alone he could not do the work of a truck driver. I rather believe he is to some extent disabled in this regard. I would say that the man to do work is 50 per cent disabled from an orthopedic point of view. I believe he is highly disabled, part of it is due to the diabetes, part of it due to the pneumonitis and part of it due to the injury and condition of the back." (Tr. 142).

Dr. James P. Owens, of Cincinnati, Ohio, in reporting to the Ohio Delivery, Inc., relative to the plaintiff's workmen's compensation claim, stated on March 8, 1971:

"After review of the file and specialist's report claimant is considered to have no industrial value and to be permanently and totally disabled." (Tr. 157).

The "specialist's report" referred to is that of Dr. Robert J. McDevitt, a psychiatrist of Cincinnati, Ohio, who examined the plaintiff on November 5, 1970. In reporting to the Bureau of Workmen's Compensation, State of Ohio, Dr. McDevitt said:

"Opinion: After reviewing the chart and examining the patient today it is obvious that he is regressed, well fixed in his symptomatology and shows little or no motivation to change his mode of behavior. He himself feels pessimistically that he cannot go forth. He has been well fixed by passive treatment over the past number of years and it is obvious that he would resist any active psychotherapeutic intervention and the present type of treatment available would not be expected to produce much in the way of results.

"In the examiner's opinion he shows a clear-cut continuing disability since his accident. Not mentioned above but theroretically possible is the treatment of the underlying agitation

anxiety. Prompt return to work and rehabilitation in an industrially motivated program could have been of benefit to him. However, his symptomatology has been so well fixed at this point and the secondary gain is so pronounced that this examiner doubts that anything definitive can be done. Because of his age, poor intellectual ability, poor motivation, and well fixed symptomatology his industrial value appears to be nil. He is also suffering from a severe form of hypertension which does not appear to be under adequate treatment at present. It is suggested that this hypertension is probably prior to the accident and is in no way related except indirectly to his present emotional condition but probably forms the underlying hysterical predisposition responsible for his present invalidism. He does show evidence of a post-traumatic neurosis which is well fixed at this point and renders him industrially ineffective and useless. From his own subjective complaints one places his disability at total permanent with a disability rating of at least 90% to 100%. There is no evidence at present that he has the motivation, intellectual ability or emotional strength, to return to a productive and worthwhile occupation. Attention is also drawn to the fact that he does have an untreated hypertensive condition and it is respectfully suggested that his attending physician should take care of this or refer him to someone who can. The hypertension by his own history preceeds the industrial accident and this examiner's opinion is that it is not causally related to his present condition but is indeed a facet of his character formation and physical makeup.

"Findings: The patient does have a post-traumatic neurosis with a total permanent disability due to the above mentioned factors." (Tr. 161).

In reviewing the history of the plaintiff's case since the date of the accident on June 8, 1965, Dr. McDevitt also said:

"He has been under conservative treatment by his attending physician, Dr. DeCourcy ever since that time, has been seen in three different orthopedic consultations by Dr. Rerning but none of these reports are available in the chart. Dr. Thomas Ratley saw him in consultation on Feb. 7, 1967 and was unable to find any orthopedic difficulty. Significantly enough the first report filed by his attending physician on 7/27/65 diagnosed his condition as a traumatic neurosis secondary to the shock of the injury. He was seen in consultation by Dr. William Roach on Sept. 11, 1967. Dr. Roach felt that Mr. Moyer was a very primitive person and that he was essentially disabled from a psycho-physiological reaction and essentially he could not be rehabilitated. He felt that he had total permanent disability and the prognosis was poor for eventual rehabilitation." (Tr. 160).

Another comprehensive examination was made by Dr. Carl G. Thompson of Cincinnati, Ohio, on October 27, 1971. Dr. Thompson, specialist in internal medicine, made the following findings:

"1. I can see no evidence of a lymphoma or any disease of the hematopoietic system. Accordingly, I did not do the bone marrow examination which was authorized. I believe that the episode of adenitis in 1968 was probably an acute infectious process which cleared with the antibiotics used to treat his pneumonia.

"2. There are no functional limitations by virtue of any tumor or lymphoma.

"3. I believe that he is completely disabled for any sort of work, most likely on the basis of a conversion reaction secondary to his accident.

"4. I do not believe that remedial measures or psychotherapy will improve this situation, though this would be the only course to follow if such improvement were sought." (Tr. 165–166).

Dr. William R. Chambers, a psychiatrist and neurosurgeon who was apparently Clinical Director of the Longview State Hospital, Cincinnati, Ohio (Tr. 178), testified at the hearing on January 20, 1972. He had never met or examined the plaintiff prior to that date. (Tr. 59). It was his testimony, based on the testimony of the plaintiff and his review of the medical reports, that he had sufficient information to give his professional medical opinion of Mr. Moyer's impairments and their severity. (Tr. 63–64).

It was his opinion that there was no objective evidence to support the diagnosis of Dr. Lanter (Tr. 62); he conceded that Dr. McDevitt and Dr. Roach are "two very good psychiatrists . . . very very thorough men" (Tr. 61–62), but testified that "the positive evidences of a disabling anxiety have not been elucidated, have not been brought to the floor, have not been enumerated by these psychiatrists." (Tr. 64). He agreed that the plaintiff's orthopedic impairment was 50 per cent but that it would not interfere with "simple assembly tasks in a sedentary manner." (Tr. 65).

Thelma E. Brown, Ph.D. of Cincinnati, Ohio, engaged in private consulting work and in the assessment of manpower in industries and career planning for individuals (Tr. 75), testified as to job opportunities for a man with the plaintiff's transferrable skills, taking into consideration the limitations indicated by Dr. Chambers. It was her opinion that based on this hypothesis there were many sedentary jobs which were available in the metropolitan area of Cincinnati. (Tr. 80–81). It was also her opinion that "(B)ased on the testimony that was given by the applicant, just that alone would suggest to me that his condition would be too severe for him to engage in gainful employment. He would be unable to hold a job extending for eight hours at a time." (Tr. 79).

The findings of the hearing examiner are as follows:

"1. The claimant met the special earnings requirements on June 10, 1965, the alleged onset date and continued to meet them until December 31, 1970, but not thereafter.

"2. The claimant was born on May 28, 1919, has a sixth grade education, and was employed as a truck driver for Ohio Delivery Company, Cincinati, Ohio for the period 1951 to June 10, 1965. Prior to that, the claimant was self-employed for seven months in 1950 running a gasoline filling station. His only task there was to pump gasoline since there was no grease rack available and no automobile maintenance or other repairs were performed. Before that, the claimant engaged in farm labor.

"3. On June 10, 1965, the claimant was involved in a accident with another truck. As a result, he received an orthopedic impairment of approximately 50 percent which thereafter has continuously precluded his employment at any job requiring excessive bending, lifting weights in excess of 15 pounds, walking up or down steep grades or stairs, and removing items from shelves overhead. As a result of the accident, in which the other driver was killed, the claimant probably incurred a mental or anxiety reaction which would have progressively improved and was minimal or nonexistent after five years or by June of 1970. The claimant has also been and continues to be afflicted with diabetes, controllable without the use of insulin. Such condition accounts for the weakness and fatigue which he experiences. In addition, the claimant is obese which may account for shortness of breath, stiffness, and pain. Since 1968, he has been on a diet for that condition and his diabetes but has not faithfully followed it, and although losing weight, remains quite overweight. The claimant also has a lung condition for which he takes medication and which condition has generally

been under control since 1968 when he last had pneumonia.

"4. The claimant's impairments, in combination, preclude his return to work in his former jobs. As a truck driver, loading and unloading, his work was of a heavy nature. His filling station job was in the light work category since involving standing and walking. His impairments do not, however, and did not as of December 31, 1970, preclude all gainful work activity and the claimant retains the residual functional capacity to engage in sedentary type work activities excluding those physcal activities previously mentioned based upon his orthopedic impairment.

"5. Considering the claimant's age, education, prior work experience, and transferrable skills and based upon his ability to engage in sedentary work activities, a significant number of jobs exist in his geographical region which the claimant could perform. Specifically, there are over 1,000 such jobs in assembly and bench type activities which are of a sitting nature, require very minimal lifting, and no bending. In addition, there are 2800 jobs in machine operations of which 1500 relate to fork lift drivers. Furthermore, there are 1400 jobs existing for guards and gatekeepers, several hundred jobs for elevator operators, and numerous jobs in the furniture and toy industry for spray painting, etc. These jobs generally involve only sitting. However, some employers have no objection if the employee chooses to sit or stand.

"6. Since June 12, 1965, the claimant has continuously been receiving workmen's compensation payments. For the first 12 weeks, he received $56.00 per week. After that time and until 3 months ago, he received benefits of $49.00 per week. Commencing 3 months ago, the claimant's workmen's compensation benefits were increased to $108.15 every two weeks.

"7. The evidence fails to establish that the claimant's impairments prevented him from engaging in any substantial gainful activity for any continuous period beginning on or before December 31, 1970, which has lasted or can be expected to last at least 12 months.

"8. The claimant was not under a 'disability' as defined in the Social Security Act, as amended, at any time prior to December 31, 1970." (Tr. 18–20).

■ It is well settled that the district court does not consider the evidence de novo and if the findings of the Secretary are supported by substantial evidence they are binding upon the court. Rose v. Cohen, 6 Cir., 406 F.2d 753; Walters v. Gardner, 6 Cir., 397 F.2d 89; Lewis v. Gardner, 6 Cir., 396 F.2d 436.

The Secretary has found that the plaintiff's impairments have not prevented him from engaging in substantial gainful activity and that he is not under a disability as defined by the Act. The court is of the opinion that these findings are not supported by substantial evidence.

The examiner "has chosen to base his findings upon the testimony of Dr. Chambers to the effect that no mental impairment exists." (Tr. 17). Eminent as Dr. Chambers may be and impressive from his professional experience, the fact is not disputed that his "only exposure to Mr. Moyer was reviewing this file and hearing him testify in here this morning." (Tr. 74).

In Whitson v. Finch, 6 Cir., 437 F.2d 728, 732 (1971), the court said:

"The government's brief suggests that it is proper to view the treating physician's report with skepticism because the treating physician is inclined to be sympathetic to the patient and because his reimbursement may be affected by allowance of the disability claim. Accepting both of these

hypotheses, a similar skepticism can be counseled concerning the report of a physician employed and paid by the government solely for the purposes of defending against a disability claim."

The plaintiff's attending physician, Dr. DeCourcy, was of the opinion that he is "totally and permanently unable to work." (Tr. 148). His opinion is corroborated by other medical evidence which was adduced after thorough and careful examinations of the plaintiff over the period in question.

This 54 year old plaintiff with a sixth grade education sees his doctor every week; takes one tablet four times a day and another one when he goes to bed; pain medication three times a day; nerve medication twice a day and diabetic medication (all prescribed by Dr. DeCourcy). (Tr. 55). This coupled with Dr. McDevitt's statement that he is "industrially ineffective and useless" (Tr. 161) would seem to make it very unrealistic to hold that he is capable of engaging in any substantial gainful activity. See York v. Gardner, 6 Cir., 397 F.2d 209.

While the plaintiff has been found to be disabled by the Bureau of Workmen's Compensation of the State of Ohio, this fact is not controlling in a case under the Social Security Act. Nelms v. Gardner, 6 Cir., 386 F.2d 971 (1967); Hunley v. Cohen, 288 F.Supp. 537 (1968). However, the court cannot close its eyes to this evidence which supports the plaintiff's claim.

The plaintiff has carried the burden of establishing that he is entitled to benefits under the Act. The defendant's motion for summary judgment in his favor should be overruled. The decision of the Appeals Council should be reversed and the case remanded to the Secretary, Department of Health, Education and Welfare, with directions that the plaintiff be granted a period of disability insurance benefits in accordance with the Social Security Act, as amended.

An order in conformity with this memorandum is this day entered.