Steward W. POPE, Plaintiff,

v.

Patricia Roberts HARRIS, etc.,
Defendant.

No. CIV–2–79–62.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Jan. 3, 1980.

Myers N. Massengill, Bristol, Tenn., for plaintiff.

John H. Cary, U. S. Atty., Knoxville, Tenn., by Guy W. Blackwell, Asst. U. S. Atty., Greeneville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action for the judicial review of the final decision of the defendant Secretary, 42 U.S.C. § 405(g), denying the plaintiff's claim for disability health insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i), 423, and for supplemental security income benefits, 42 U.S.C. § 1383(c)(3). The defendant moved for a judgment on the pleadings. Rule 12(c), Federal Rules of Civil Procedure.*

---

* The plaintiff failed to make a timely response to such motion and, thus, is deemed to have waived any response thereto. Local Rules 12(b), 11(f).

The plaintiff filed an application for such benefits on May 1, 1975, alleging that he first became unable to engage in substantial work on May 20, 1974 because of an injury, limited use of his right arm and leg, and nervousness. That claim was denied initially and on reconsideration; however, an administrative law judge granted the application on November 10, 1976. The plaintiff was notified in May, 1978 that the Social Security Administration had determined that his disability had ceased as of February, 1978, and such decision was affirmed on reconsideration. An administrative law judge denied the plaintiff's application for continued benefits on January 11, 1979, and this became the final decision of the defendant Secretary when an appeals council, after considering additional evidence, approved it.

The administrative law judge found, *inter alia*:

\* \* \* \* \* \*

4. During and subsequent to February, 1978, [the plaintiff] did not experience any significant physical impairment or more than a slight chronic mixed neurosis.

5. During and subsequent to February 1978 the [plaintiff] no longer experienced medical impairments, singly or in combination, of sufficient severity to prevent his participation on a regular basis in substantial gainful activity such as that previously performed as a sedentary industrial assembly inspector.

6. During and subsequent to February 1978, [the plaintiff] did not experience pain, discomfort, limitation of motion, physical or emotional symptomatology or functional limitation or restriction, singly or in combination, of sufficient severity, frequency or duration to be "disabling," allegations and testimony to the contrary not being found credible.

7. The \* \* \* [plaintiff] was [not] suffering from any other impairment which would have imposed any significant limitation on his vocational functional abilities during or subsequent to February 1978.

8. During and subsequent to February 1978, [the plaintiff] had the residual capacity to perform even heavy exertion on a regular and sustained basis.

9. The [plaintiff] has failed to establish that during and subsequent to February 1978, he experiences greater than a combination of slight or mild medical impairments or abnormalities or any limitation or restriction on his abilities to perform work related functions.

10. The [plaintiff's] disability ceased in February 1978. Entitlement to a period of disability and disability insurance benefits ended with the month of April 1978.

\* \* \* \* \* \*

Such findings by the Secretary are conclusive if they are supported by substantial evidence in this record. *Wokojance v. Weinberger*, C.A.6th (1976), 513 F.2d 210, 212[3]. This Court may only determine whether the Secretary's decision is based upon such evidence. *LeMaster v. Weinberger*, C.A.6th (1976), 533 F.2d 337, 339[1]; *Ingram v. Richardson*, C.A.6th (1972), 471 F.2d 1268, 1271[4]. As stated by the Supreme Court:

> \* \* \* We have defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. Labor Board* [1938], 305 U.S. 197, 229, 59 S.Ct. 206 [216], 83 L.Ed. 126. "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Labor Board v. Columbian Enameling & Stamping Co.* [1939], 306 U.S. 292, 300, 59 S.Ct. 501 [505], 83 L.Ed. 660, 665. \* \* \*

*Consolo v. Federal Maritime Com.* (1966), 383 U.S. 607, 619–620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131, 140–141[9].

Mr. Pope was born on May 28, 1943. He discontinued his formal education during the 7th grade. His employment history includes work as a telephone assembly-line inspector, bag inspector, service station attendant, and stock boy.

Dr. James A. Pettigrew, a neurological surgeon and the plaintiff's treating physician, reported on February 20, 1978 that the plaintiff had returned for treatment, complaining of muscular aches and pains and cramps in his shoulders, pectoral girdles and lower back. Dr. Pettigrew suspected that Mr. Pope was suffering from a virus and prescribed medication therefor. The plaintiff was to continue to take Valium at bedtime. Dr. Pettigrew reported that Mr. Pope's reflexes were active, equal, and physiological; none were pathological. His strength was good bilaterally, and Dr. Pettigrew detected no significant muscular spasm.

In an office note of March 2, 1978 Dr. Pettigrew reported that the plaintiff had returned for an office visit with his chest complaints, and that his cough and tightness were much better. He gave Mr. Pope a prescription for Trilisate for his " * * * aches and pains * * *." Dr. Pettigrew opined on a physical-capacities' evaluation form that the plaintiff was capable of performing sedentary work or less than a full range of sedentary work, depending upon his pain.

Mr. Pope was examined by Dr. James G. McFaddin, an orthopedist, also on February 20, 1978. Dr. McFaddin noted that he had examined the plaintiff previously for a low-back disorder. Mr. Pope stated to this physician that his present impairment began in 1972 when he fell from a chair at his place of employment, injuring his neck, back, legs and arms. Dr. McFaddin observed that the plaintiff demonstrated normal gait and station, and that he was cooperative and intelligent. Mr. Pope did not appear to be overly apprehensive or anxious at the time of the examination by Dr. McFaddin.

The plaintiff's lumbar curve was normal and his pelvis was level with no scoliosis or kyphosis. Mr. Pope complained of pain throughout his lumbosacral region which radiated to the posterior aspect of both thighs. Dr. McFaddin reported that the plaintiff had moderate callosities of both hands which he said was " * * * indicative of some form of work at this time. * * * " His grasp was excellent, and all of his joints moved freely without crepitus. There was no muscle-wasting or disuse, and arm circumferences were equal. In general, the appearance and function of the plaintiff's upper extremities were well within normal limits. Dr. McFaddin reported also that the muscle bulk in the calves of the plaintiff's legs was excellent. X-ray pictures were made of his right knee, his cervical spine and his right hand, and all were considered to be within normal limits. There was no evidence of recent or remote trauma with regard to his cervical vertebrae.

Dr. McFaddin stated that the physical and x-ray findings were within normal limits and that, objectively, Mr. Pope showed no orthopedic impairment or undue anxiety. In a physical-capacities' evaluation, Dr. McFaddin opined that Mr. Pope was capable of performing heavy work.

Dr. Robert Irby, an internist, examined the plaintiff in August, 1978. Mr. Pope complained then of tiredness and stiffness and stated that he had been able to sleep only about 4 hours per night. Dr. Irby found no active synovitis and could detect no change since 1975 in the plaintiff's condition.

Dr. H. H. Brockian, a psychiatrist, examined the plaintiff on February 18, 1978. He diagnosed a chronic neurosis, mixed-type, with anxiety and conversion symptoms prominent. He reported that Mr. Pope seemed to be fairly " * * * comfortable * * * " psychologically and that he had never received psychotherapy. Dr. Brockian stated that he knew nothing of the plaintiff's physical condition and that the basis for a continuance of his disability payments was Dr. Pettigrew's report, and not his psychological evaluation. Dr. Brockian noted, however, that his prognosis was poor for Mr. Pope unless he received intensive psychotherapy.

At the latest administrative hearing herein, the plaintiff testified that he is virtually illiterate. He stated that he suffers from spasms in his shoulders, neck and lower back with pain and numbness in his arms and legs. He claimed he drives an automobile occasionally but spends a great deal of time during the day lying down because his legs are " * * * just in a shake * * * " and because of weakness in his arms. He uses a traction device for his neck. He testified also that he takes 2 Valium tablets before going to bed, but that he continues to suffer from sleeplessness.

Mr. Pope's wife testified that he suffers from muscle spasms 2 or 3 times per week. She said that he often suffered from sleeplessness and had memory lapses. Her testimony generally corroborated that of her husband.

■ The burden was on Mr. Pope to have established his continuing disability. *Myers v. Richardson*, C.A.6th (1972), 471 F.2d 1265, 1267[4]. The Secretary and her administrative law judge, as the factfinders, had the power to weigh and evaluate the evidence and resolve all conflicts in it. *Lane v. Gardner*, C.A.6th (1967), 374 F.2d 612, 616[2]. The mere presence of a physical or mental impairment, alone, is not enough to warrant an award of such disability benefits; for the plaintiff must also be precluded from engaging in any substantial gainful activity by reason of such impairment or combination of impairments. *King v. Gardner*, C.A.6th (1967), 370 F.2d 652, 654[1]. Any such impairment must be proven through medically acceptable clinical and laboratory diagnostic techniques. *Floyd v. Finch*, C.A.6th (1971), 441 F.2d 73, 75[1].

■ The opinion of a physician as to the plaintiff's disability is not conclusive of such ultimate issue, but it must be considered and weighed by the Secretary along with other contrary respectable opinions. *Halsey v. Richardson*, C.A.6th (1971), 441 F.2d 1230, 1236. The Secretary was authorized to give greater weight to the opinion of a physician specializing in the field of medicine in which the plaintiff's impairment lies. *Hunley v. Cohen*, D.C.Tenn.

(1968), 288 F.Supp. 537, 540[1, 2]. When the plaintiff is capable of performing his usual work, then the Secretary need not show what other forms of work the plaintiff is capable of performing. *Carden v. Gardner*, C.A.6th (1965), 352 F.2d 51, 52[2].

Dr. Pettigrew's opinion is entitled to substantial weight, since he treated Mr. Pope for approximately 5 years. *Hephner v. Mathews*, C.A.6th (1978), 574 F.2d 359, 362[7]. Dr. Pettigrew opined in 1976 that the plaintiff was totally and permanently disabled because of a cervical syndrome and a traumatic neurosis. In his evaluation of February, 1978, however, this doctor reported that the plaintiff's reflexes were active and equal, that his strength was good bilaterally, and that no significant muscular spasm was detected. He also opined that Mr. Pope was capable of sedentary or less than a full range of sedentary work, depending on his pain. In a report of February 7, 1979, Dr. Pettigrew noted also that the Valium that he had prescribed relieved the plaintiff's cramps, pain, and spasm. Thus, it appears that Mr. Pope's treating physician has withdrawn somewhat from his earlier position that his patient was totally and permanently disabled.

■ Although pain alone can be disabling, there is a paucity of medical evidence in the record to support the plaintiff's subjective allegations of pain. Also, there are present in it respectable medical opinions indicating that Mr. Pope is not disabled. Under these circumstances, the administrative law judge, as the factfinder, was entitled to conclude that the plaintiff's pain was not disabling. *Halsey v. Richardson, supra*, 441 F.2d at 1236.

The pleadings and exhibits showing that the defendant is entitled to a judgment as a matter of law, his motion for a judgment on the pleadings hereby is GRANTED. Rule 12(c), Federal Rules of Civil Procedure. Judgment will enter, affirming the final decision herein of the defendant. Rule 58(1), Federal Rules of Civil Procedure.