Georgia P. HORNER, Plaintiff,

v.

Richard S. SCHWEIKER, etc.,
Defendant.

No. CIV-2-82-32.

United States District Court,
E.D. Tennessee,
Northeastern Division.

June 29, 1982.

G.P. Gaby, Greeneville, Tenn., for plaintiff.

John W. Gill, Jr., U.S. Atty. by Jimmie Baxter, Asst. U.S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is a judicial review of the final decision of the defendant Secretary, denying the claim of the plaintiff Mrs. Georgia P. Horner for disability health-insurance benefits under the Social Security Act. 42 U.S.C. § 405(g). Mrs. Horner alleged that she became disabled on September 16, 1977 because of a condition in her back.

The defendant, through his administrative judge, found that the plaintiff, despite her impairments, retained the residual functional-capacity to return to her past relevant work as a cook and waitress or laundry-worker. He concluded, therefore, that she was not under a compensable disability. *See* 20 C.F.R. § 404.1520(e). These findings are conclusive if supported by substantial evidence in the record. *Wokojance*

*v. Weinberger,* C.A. 6th (1975), 513 F.2d 210, 212[3], certiorari denied (1975), 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 82.*

Mrs. Horner testified at the administrative hearing herein that she injured her back first in January, 1977 in connection with her job when she slipped and fell on an icy sidewalk; that she suffers from pain in her back " * * * most of the time * * * "; that due to her back condition, she can do light laundry, is able to wash dishes and can do some cooking; and that she has no strength or stamina. She attends church 3 times per week and drives her automobile.

Mrs. Horner was born September 5, 1932 and completed the 8th grade. Her only vocational training occurred during 1976 when she trained to become a nurse's-aide. She worked at a nursing home from March, 1976 until she slipped and fell in January, 1977 and has not worked regularly since.

Mrs. Horner testified further that in addition to her back-impairment she suffers from nervousness; that she underwent a hysterectomy in 1962; that she underwent gall-bladder surgery in 1975 or 1976; that she is a "borderline" diabetic (controlled presently by diet); that she underwent surgery for a femoral hernia in May, 1980; that she suffers recurrent urinary-tract infections; and that she has a stomach-impairment.

■ Mrs. Horner last met the special earnings requirements of the Act on September 30, 1980. Accordingly, she had the burden of showing that her disability began on or before that date. *Gibson v. Secretary of Health, Education and Welfare,* C.A. 6th (1982), 678 F.2d 653, 654 (1982); *Estep v. Weinberger,* C.A. 6th (1975), 525 F.2d 757, 757–758 [1].

Mrs. Horner was treated after her fall by Dr. Walter C. Chapman, an orthopedist. In a report of May 25, 1977, he stated that she had failed to respond to conservative treatment of her back but that a lumbar myelogram which was performed was within normal limits. He was unable to explain her continued symptomatology and expected to release her to return to work in June, 1977.

Mrs. Horner was examined in September, 1977 by Dr. David F. Fardon, an orthopedist, upon referral by Dr. Chapman. Dr. Fardon's diagnosis was chronic mechanical low-back disorder; he stated in his report *inter alia*: " * * * This lady acts hostile. I don't think there is much wrong with her back and I don't think there is anything we can do for her. * * * "

Dr. Fred F. Brown, Jr., a neurological surgeon, examined the plaintiff on August 9, 1978, on April 20, 1979 and again on June 2, 1981; each such time he reported no evidence of injury or pathology in her central or peripheral nervous system on neurological examination. In his most recent report, Dr. Brown noted:

\*    \*    \*    \*    \*    \*

This lady is not accurately describing the symptomatology that occurs with pathology in the lumbar spine with or without nerve root compression. This lady is not describing sciatica at all. This lady does not show any sign whatsoever of pathology in her lumbar spine and does not show any sign whatever of sciatic nerve root compression. In my opinion, she can do any kind of work that any other lady her age can perform.

\*    \*    \*    \*    \*    \*

Two physicians were of the opinion that Mrs. Horner was totally and permanently disabled: Dr. E. Gene Lynch, a general practitioner, stated this on November 17, 1980; but, on a physical-capacities' evaluation form, completed the same day, reported she was capable of performing medium work activity. (This obvious discrepancy was noted in his report of June 2, 1982 by Dr. Brown who stated also that Dr. Lynch's opinion was not supported by objective

---

* "Substantial evidence" constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. *Consolo v. Federal Maritime Com.* (1966), 383 U.S. 607, 619–620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131, 140–141 [9].

medical evidence of any impairment of function.)

Dr. Robert A. Cooper, also a general practitioner, examined Mrs. Horner on June 10, 1981; he hospitalized her for consultation and gastroscopy. His final diagnosis was duodenitis, irritable bowel-syndrome, acute and chronic depressive anxiety and chronic low-back syndrome. He reported that although no specific anatomical abnormalities were elicited, she was disabled " * * * as the result of many ramifications of her chronic low back syndrome and psychophysiological disorders."

■ The administrative judge found that the objective medical evidence demonstrated that Mrs. Horner was not disabled. She was required to have proved a disabling impairment or combination of impairments through medically acceptable clinical and laboratory diagnostic techniques, *Floyd v. Finch,* C.A. 6th (1971), 441 F.2d 73, 75 [1], and also that any such disability began on or before September 30, 1980; the mere presence of an impairment, alone, is not enough to warrant an award of disability benefits, for the plaintiff must also be precluded from engaging in any substantial gainful activity by reason of such impairment. *King v. Gardner,* C.A. 6th (1967), 370 F.2d 652, 654 [1].

Dr. Lynch's and Dr. Cooper's opinions as to the plaintiff's disability are not conclusive of such ultimate issue; although they are to be weighed by the Secretary along with all the other evidence. *See Halsey v. Richardson,* C.A. 6th (1971), 441 F.(2d) 1230, 1236. The weight to which a physician's opinion of disability is entitled " * * * depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments. * * * " 20 C.F.R. § 404.1526.

■ In weighing the conflicting evidence, the administrative judge, as the factfinder, was entitled to give greater weight to the reports of Drs. Fardon and Brown because they are specialists in the field of medicine

in which Mrs. Horner's primary impairments lay. *Hunley v. Cohen,* D.C.Tenn. (1968), 288 F.Supp. 537, 540 [1, 2]. This Court is not permitted to substitute its view of the evidence for that of the Secretary.

■ The plaintiff underwent a psychological evaluation by Dr. John T. Johnson, Ph.D. He opined that she was an individual with normal intelligence; that she had no impairment in her ability to relate to other people; that she appeared to have no restriction of her daily activities; that her personal habits were good; that her interests did not appear to be restricted; that she could comprehend and follow instructions; and that she could perform work requiring frequent contact with others. Dr. Johnson recommended psychological-counseling and noted that her longstanding psychological condition " * * * would interfere with her performance in a job situation, due to continued concern over physical problems that would lead to a high rate of absenteeism. * * * " He opined that she could perform in a job-situation having a variety of contact with people, travel, and some degree of self-determination. Dr. Johnson completed a questionnaire relating to her residual functional-capacity and noted therein that Mrs. Horner's psychiatric impairments were, at most, moderate in nature as opposed to moderately severe or severe.

In order to be entitled to an award of benefits, the burden was on Mrs. Horner to show that she suffered from a severe impairment which " * * * significantly limit[ed] * * * " her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *Jamison v. Secretary of Health, Education and Welfare,* D.C.Mich. (1975), 394 F.Supp. 296, 302. She did not carry this burden with respect to her mental impairment.

The pleadings and exhibits showing that the defendant is entitled to a judgment as a matter of law, his motion for judgment on the pleadings hereby is GRANTED. Rule 12(c), Federal Rules of Civil Procedure. Judgment will enter, affirming the final

decision herein of the defendant. Rule 58(1), Federal Rules of Civil Procedure.