Everette D. **WHITSON**, Petitioner-
Appellant,

v.

Robert H. **FINCH**, Secretary of Health,
Education and Welfare, Respondent-
Appellee.

No. 20290.

United States Court of Appeals,
Sixth Circuit.

Feb. 12, 1971.

James L. Fuqua, Jr., Nashville, Tenn.,
for petitioner-appellant; Quentil L.
Housholder, Nashville, Tenn., W. Keith
Crawford, Cookeville, Tenn., counsel of
record.

George E. LeFeve, Asst. U. S. Atty.,
Nashville, Tenn., for respondent-appel-
lee; Charles H. Anderson, U. S. Atty.,
Nashville, Tenn., on brief.

Before EDWARDS, PECK and Mc-
CREE, Circuit Judges.

EDWARDS, Circuit Judge.

In this case a Social Security claimant
appeals from the denial of his claim for
total disability benefits. The adverse
decision was entered in the United
States District Court for the Middle
District of Tennessee after the District
Judge had reviewed the administrative
record and affirmed denial of the claim
by the Trial Examiner and the Social
Security Appeals Board.

Since we find no substantial evidence
to support denial of this disability claim,
we reverse for entry of an award of
benefits for the two years with which
we are concerned herein.

It should be noted that the posture of
this case has changed somewhat since
the District Court proceeding. At ap-
pellate hearing the United States Attor-
ney advised that another application
from appellant for total disability bene-
fits filed subsequent to the denial of the
application considered herein, but based
upon the same disability, has now been
granted.

What remains at issue is the period of
time beginning with the date of the ac-
cident, May 27, 1966, when claimant re-
ceived a broken hip, and terminating
January 24, 1968, when appellant began
drawing total disability benefits. But

also at issue is a somewhat important question bearing on what constitutes "substantial" medical evidence in Social Security disability cases.

At the time of the original hearing before the Trial Examiner, appellant was 57 years old. He had a wife and four children. He had an eighth grade education. He had been farming on a farm he had bought near Cookeville, Tennessee, and testified that subsequent to the accident he was unable to continue farming and has had to walk with a crutch. Lay testimony substantiated appellant's claims that prior to the accident he had been a good worker and that he had not worked since. Before purchasing the farm near Cookeville, Tennessee, appellant had worked for a number of years as a drill press operator in Detroit, Michigan, principally at Briggs Manufacturing Company.

It is undisputed on this record that during the period at issue herein appellant did not work at any substantially gainful employment. What is disputed is the question of whether or not he could have. This question the Trial Examiner and the Appeals Board resolved largely by reference to medical reports. Since we believe the Trial Examiner made a fair statement of the conflicting reports (while drawing an erroneous conclusion therefrom), we shall quote the disputed evidence as set forth in his opinion:

"Thurman Shipley, M.D., a full-time general practitioner, was claimant's attending physician at the time of his accident and according to the Cookeville General Hospital notes, Dr. Shipley's final diagnosis was fracture of left acetabulum; dislocation of head of left femur; laceration of left leg exposing tibia; and contusions about the head and left leg. Operation is described as reduction of dislocated hip. In this connection the doctor stated: 'The most significant finding was that there was a dislocation of the head of the left femur with fracture of the rim of the acetabulum posteriorly.' The above information is taken from the discharge summary dated June 7, 1966. In a report dated October 5, 1966, Dr. Shipley recorded diagnoses of: 1. Fracture of left acetabulum; 2. Dislocation of head of left femur (reduced); 3. Lacerations of left leg exposing tibia (healed); and 4. Contusions about head and left leg (healed). In this report the doctor stated that the claimant was hospitalized from May 27 until June 7, 1966. At the time of this report the claimant was up on crutches but could not bear weight on the injured hip.

"In a report dated June 10, 1967, this doctor repeated the same diagnoses as given in his report of October 5, 1966. Dr. Shipley stated that the claimant's general health was good. He had good motion of his arms but had limited motion of the left hip. He walked on one crutch part time and was using both crutches part time, limping on his left leg. The doctor described the anteroposterior examination of the pelvis as follows: 'Comparison with the previous film of 1–19–67 does not show any significant change particularly in reference to the left hip. There has always been a slight roughening of the femoral head medially but does not appear to be any more prominant (sic) and the joint appears to be of normal width. The acetabular fracture fragment is again visualized unchanged in position and alignment and there is no real evidence of any hypertrophic arthritic change about the left hip.'

"Andrew H. Miller, M.D., a full-time specialist in orthopedic surgery, did an orthopedic evaluation of the claimant at Government expense on November 1, 1966. The claimant stated that his chief complaint was a disability in his left hip. He said that his principal injury consisted of a dislocation of his left hip with a fracture of the left acetabulum, that following the accident in May 1966 he was hospitalized for 10 days to 2 weeks and was in bed for about 6 weeks, then he became ambulatory on crutches and had gradually increased his activities so that he was at that time partially

weight bearing. Occasionally in his house he walked without crutches. He said that he felt quite stiff and sore after prolonged inactivity and that this loosened up some with ambulation. The claimant was 5 feet 8 inches tall and weighed approximately 160 pounds. He could stand and move easily in the small examining room. No effort was made to ambulate him at any length. He had a good range of motion without any pain. There was no fixed flexion contracture of his left hip. He had a virtually normal range of flexion-extension in the left hip. Abduction-adduction was about 75% of normal. Internal and external rotation of the left hip was 50–60% normal as compared to the right. 'There is moderate atrophy of the left thigh. Reflexes in lower extremities are present and equal bilaterally.' X-rays made of the claimant's left hip in the anteroposterior and lateral views revealed evidence of an old fracture of the posterior rim of the acetabulum. 'It is not in anatomical position, but is in very satisfactory position, and is small enough that there is no instability of the hip joint. The joint space is well maintained. There are no arthritic changes or avascular necrosis demonstrated yet.' The remainder of Dr. Miller's report is as follows:

" 'Mr. Whitson sustained an injury to his left hip which was apparently a dislocation associated with a fracture of the small piece of the posterior rim of the acetabulum. His treatment has been good, and he is making a good recovery.

" 'I generally permit patients to be full weight bearing now, but [sic] this stage of convalescence, and I would think that Mr. Whitson could resume this, gradually increasing his activities over the next few weeks. If he does not develop any of the latent complications associated with this injury, I would not expect any material disability as a result of the accident.'

"Dr. Miller saw the claimant again on May 19, 1967, for a re-evaluation. Claimant reported to him at this time that he had not attempted to do any gainful employment. He had continued to walk with one crutch, do a little yard work around home, but had not worked for anyone else. He felt that he was 'unable to do all of these things because of pain in his left hip.' On physical examination the doctor noted that the claimant walked with a single crutch. He walked all right without the crutch and without a limp. He had a full range of motion in his left hip. There was a 1 inch atrophy of the left quadriceps. He had full knee and ankle motion. The doctor continued:

" 'X-rays were made including an A-P of the pelvis and lateral of the left hip. The left hip is within normal limits. There is no evidence of avascular necrosis. The contour of the femoral head is normal, the joint spaces are well maintained, and there are no arthritic changes.

" 'There seems some discrepancy between the symptoms described by Mr. Whitson and the objective findings present at this time.'

"Dr. Shipley submitted another report dated August 31, 1967, in which he stated that he was treating the claimant for injuries received in an automobile accident on May 27, 1966. The doctor described his treatment of the claimant immediately after the injury and stated that Dr. Jere Lowe was consulted about the reduction and treatment of the dislocation of the left hip and the fractured acetabulum. He commented that these were successfully reduced by Dr. Lowe and the claimant was hospitalized until June 7, 1966, after which time he remained at home with bedrest until August 9, 1966. He was able to use crutches to a limited extent and be up in a wheel chair. The doctor further stated that since that time the claimant had made slow improvement, that the last x-ray examination was made on April 19, 1967, and at that time the neck of the femur was osteoporotic and there was some roughening of the medial side of the femoral head which might account for the pain the claimant suffers on

weight bearing on this joint and that he still uses a crutch for ambulation. Dr. Shipley closed his report with the following statement: 'This man has no significant education or capacity for it; and therefore he is forced to depend upon manual labor for his livelihood. Since this accident he has been totally disabled for carrying on a substantial and gainful occupation. It is my opinion that he has a total disability that will continue another twelve months.'

"Jere W. Lowe, M.D., a full-time specialist in general surgery, submitted a report dated August 21, 1967, in which he referred to claimant's accident and stated that following reduction of the dislocation he remained in bed 2 months and used two crutches thereafter for about 3 months and that since that time he had used one crutch because of pain on walking on hard pavement or rough ground. He further reported:

" 'X-ray on April 19, 1967 showed slight roughening of the left femoral head medially. Examination on Aug. 8, 1967 showed limitation of external rotation of the left femur of about 40%.

" 'It is my professional opinion that Mr. Whitson is disabled for ordinary farm work that he did prior to this injury, and will continue so for a long period of time, if not indefinitely.' "

The Trial Examiner then concluded:

"It is recognized that Dr. Lowe opined that claimant was disabled for ordinary farm work for an indefinite period and Dr. Shipley was of the opinion that claimant had 'a total disability that will continue another twelve months.' However, the Secretary of the Department of Health, Education, and Welfare is not bound by the opinions of these two physicians. The hearing examiner is of the opinion that their opinions are greatly outweighed by the findings of Dr. Miller.

"No doubt, for a few months subsequent to the accident the claimant was unable to work but the evidence as a whole reveals that this inability to work did not last for a continuous period of at least 12 months as required by the Act. Dr. Miller's reports indicate that claimant could have returned to his regular work in less than 12 months following the accident."

■ We believe that the Trial Examiner was in error in relying upon Dr. Miller's reports as substantial evidence that appellant was able to return to substantial gainful activity during the period herein concerned.

The facts of the accident and the nature of the injury were not in dispute. Nor was there any dispute that before the accident appellant was gainfully employed at farming and did not return to farming thereafter. The Trial Examiner apparently conceded that appellant was disabled from farming but held that he could resume work as a drill press operator. His holding inferred that whereas farming was "manual" labor, the production drill press operation on which appellant had formerly worked in Detroit factories was not and that appellant could perform it. We are unable to find any testimonial support at all for this conclusion.

And to the degree that it rests upon Dr. Miller's two letters, we believe the Trial Examiner read much more into them than fairly can be found there. Dr. Miller's first report was not a statement that appellant could return to work (whether light or heavy); it was an optimistic (if somewhat guarded) prediction of appellant's future progress. Dr. Miller's second report concluded:

"There seems some discrepancy between the symptoms described by Mr. Whitson and the objective findings present at this time."

That sentence could probably be uttered and defended in relation to most injuries and illnesses. It could mean that the patient's description of symptoms varied from the norm by slight overemphasis or underemphasis. Or it could be employed as the Trial Examiner employed it, to infer that appellant was a malingerer.

The facts in this record are: first, appellant's two treating physicians flatly stated that he was disabled from working for over a 12-month period of time; and, second, the government's examining physician never said that appellant was able to go to work at any job.

The government's brief suggests that it is proper to view the treating physician's report with skepticism because the treating physician is inclined to be sympathetic to the patient and because his reimbursement may be affected by allowance of the disability claim. Accepting both of these hypotheses, a similar skepticism can be counseled concerning the report of a physician employed and paid by the government solely for the purposes of defending against a disability claim.

Certainly here the treating physicians expressed a definite opinion that appellant was disabled from gainful employment for over a year, and all of the lay testimony supported this conclusion. The lay and medical evidence supplied by appellant's physicians, Drs. Shipley and Lowe, fully met the applicable statutory definition of disability:

"* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i) (1) (A) (Supp. V 1965–1969).

■ Appellant had made a prima facie case. To overcome such a case with medical witness testimony alone, the medical expert must at least be prepared to commit his professional opinion as to whether or not appellant is capable of working and as to what he can do. Anything less is not in our view "substantial evidence."

In Miracle v. Celebrezze, 351 F.2d 361 (6th Cir. 1965), this court said:

"When a claimant comes forth with evidence of serious physical impairment, the record must contain evidence on which the denial of the claim may be based; and where there is uncontroverted medical testimony that the applicant is unable to engage in any substantial gainful activity, it is the duty of the Secretary of Health, Education, and Welfare to award him the relief requested, assuming that all other qualifications are met. Davis v. Celebrezze, 213 F.Supp. 477 (D.C. Tex.); Williams v. Celebrezze, 228 F. Supp. 627 (D.C.Ky.); Jarvis v. Ribicoff, 312 F.2d 707 (C.A. 6)." Miracle v. Celebrezze, supra at 378.

In Colwell v. Gardner, 386 F.2d 56 (6th Cir. 1967), this court said:

"Where a Hearing Examiner has received expert opinions on the issue of a claimant's ability to work and they are not repudiated in any respect by substantial evidence, an adverse decision should be set aside as based on suspicion and speculation." Colwell v. Gardner, supra at 73.

In Branham v. Gardner, 383 F.2d 614 (6th Cir. 1967), this court said:

"There was no testimony that appellant was not disabled; there was no evidence that he could do any work of any kind; and his three attending physicians stated he was totally and permanently disabled.

"The evidence of physicians who have been treating a patient over a long period of time and who state that he is totally incapacitated, is substantial evidence as compared with the evidence of physicians who have examined appellant on only one occasion, and whose reports are inconclusive, fragmentary, uncertain, and not contradictions of unqualified evidence that the patient is totally and permanently disabled. Where expert medical opinion as to disability and inability to engage in any substantial, gainful employment is not controverted by substantial evidence to the contrary, the adverse decision of the Secretary must be reversed. Teeter v. Flemming, 270 F.2d 873, 77 A.L.R.2d 636 (C.A. 7). See also Sebby v. Flem-

ming, D.C., 183 F.Supp. 450; Thomas v. Celebrezze, 4 Cir., 331 F.2d [541], 545; Celebrezze v. Walter, 5 Cir., 346 F.2d 156, and Wooten v. Celebrezze, D.C., 259 F.Supp. 685." Branham v. Gardner, *supra* at 634.

The judgment of the District Court is vacated and the case is remanded for entry of an award of disability benefits.