843 F.2d 1390
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dianna COOPER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 86-3514.
 United States Court of Appeals, Sixth Circuit.
 March 31, 1988.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and CHARLES M ALLEN, District Judge.*
 PER CURIAM.
 
 
 1
 A claimant who alleges that her physical and emotional disabilities have rendered her unable to work appeals a denial of social security benefits. She argues that her application for benefits was considered under regulations that had to be changed by reason of a statutory amendment, so her case ought to be remanded for consideration under the new regulations.
 
 
 2
 Congress has provided a specific remedy for people in claimant's shoes, and we cannot fashion alternative relief. Moreover, even if claimant's impairment were evaluated under the new regulations, claimant would still be ineligible for benefits. Finally, the Secretary's decision that claimant does not suffer from severe pain was supported by substantial evidence, and the Secretary did not err in relying upon the "grids" because claimant's nonextertional impairments do not limit her ability to do a full range of sedentary work.
 
 
 3
 * Claimant, who is currently 39 years old, filed an application for social security benefits alleging that she became disabled on June 2, 1982, when she accidentally sat down against the sharp corner of a table and fractured her coccyx. Claimant now has lumbosacral spondylolisthesis and fibrositis of the cervical spine. Her physical ailments are compounded by psychological impairments that include a conversion disorder, generalized anxiety disorder, and dysthymic disorder. Claimant has a tenth grade education and has worked in the past as a bill processing clerk, factory worker, bank teller, cashier, machine operator, office worker, and packer.
 
 
 4
 Her application was denied initially and upon reconsideration. Following a hearing conducted on July 3, 1984, an administrative law judge also denied benefits. Although the ALJ found that claimant had orthopedic and emotional impairments, he concluded that the combination of the two impairments did not equal the severity of the impairments in the listings. He observed that claimant retained the residual functional capacity to perform simple and repetitive sedentary work of a low-stress type. Applying this finding to the "grids" in light of claimant's age, education, and work experience, the ALJ decided that she was not disabled.
 
 
 5
 In reaching his decision, the ALJ described the claimant's physical impairment as:
 
 
 6
 " 'severe,' in that they limit her ability to engage in repetitive and sustained body movements, lift, sit, stand, and walk. She has limitations on her ability to lift more than light objects and sit, stand, or walk for extended periods of time. However, the record indicates that the claimant retains the physical capacity to engage in substantial gainful activity. She has full joint mobility and normal upper and lower extremity muscle strength. A consulting neurologist examining the claimant in August 1983 found no evidence of neurological deficits which would incapacitate her. Dr. McCloud, a consulting orthopedist, remarked in November 1983 that the claimant was capable of resuming the work activities she enjoyed at the time of her injury in June 1982. He further stated that there were no abnormalities or loss of function associated with her fractured coccyx. It is also noteworthy that no physician of record has concluded that the claimant cannot work from a physical standpoint. A second consulting orthopedic surgeon evaluating the claimant in November 1983 found good body mobility and normal ability to manipulate with each hand. From the evidence of record it appears that the claimant is functionally precluded from performing light to heavy work, that she retains the physical capacity, despite her impairments, to perform sedentary work which would allow for intermittent change of position."
 
 
 7
 The ALJ then described the claimant's emotional impairments as not having
 
 
 8
 "reached a level of severity to seriously affect her ability to engage in sedentary work. She was noted during a May 1984 psychiatric examination to be mentally alert and oriented and have unimpaired judgment and insight. Although a second consulting psychiatrist in March 1984 recommended an anti-depressant regimen and psychotherapy, the claimant has not sought psychological or psychiatrist treatment and takes no anti-depressant or other medications for her nerves. It is also noteworthy that several examining physicians have reported either a normal mental status or only slight anxiety. Her emotional problems have not seriously restricted her daily activities, constricted her interests, or affected her ability to relate to others. While the claimant may have some problems tolerating stressful work situations, there is no persuasive evidence to document emotional problems of such severity as to preclude her from performing simple and repetitive work of a low stress type. She was noted at the hearing to be pleasant, generally responsive, and able to answer questions alertly.
 
 
 9
 Review of the record reveals that the claimant's pain and other symptoms have not reached a level of severity to preclude her from working. She complains of pain in the right arm, neck, and low back. However, the complaints are not supported by convincing objective evidence and are inconsistent with her daily activities, which are not significantly restricted. She cooks, does some household chores, and spends time crocheting, driving an automobile, going shopping, reading, watching television, and visiting. Her demeanor at the hearing was not remarkable for severe and constant discomfort. She appeared to be in minimal discomfort and was able to maintain close attention to the proceeding without any noted distraction. It is noteworthy that a consulting orthopedist specifically stated in November 1983 that the claimant did not demonstrate objective findings which were consistent with either the longevity or current severity of her complaints. She takes rather minimal pain medication. In light of these factors, it is concluded that the claimant's pain, although existing, does not significantly affect her residual functional capacity for sedentary work or her ability to concentrate and maintain attention."
 
 
 10
 The Appeals Council refused to review the ALJ's decision.
 
 II
 
 11
 We first explore the procedural history of this case in the federal courts because the Secretary has asserted that a late notice of appeal has deprived this court of jurisdiction. The district court entered summary judgment in favor of the Secretary on November 7, 1985. On November 14, 1985, claimant filed a motion to alter or amend the judgment under Rule 59. In the motion she argued that a recent law directing the Secretary to promulgate new regulations for mental impairment listings (Pub.L. 98-460) required a remand of her application for consideration in light of those regulations. On December 24, 1985--before the district court had decided the Rule 59 motion--the claimant appealed from the November 7 judgment. The district court denied the Rule 59 motion on January 7, 1986.
 
 
 12
 On March 3, 1986, this court dismissed claimant's notice of appeal because it did not appeal a final judgment. On March 7, 1986, claimant filed a second notice of appeal. That notice mistakenly referred to the district court's judgment as having been entered on March 3, 1986. On March 12, 1986, claimant filed an amended notice of appeal correcting the error and designating the judgment date as January 7, 1986. Although the March 12, 1986 notice of appeal was not timely under Rule 4, Fed.R.App.P., having been filed more than 60 days after the entry of final judgment, the notice of appeal filed on March 7, 1986--59 days after entry of the January 7 order--was timely.
 
 
 13
 The Secretary contends that the claimant's March 7 notice was invalid under Rule 3(c), Fed.R.App.P., because it did not properly designate the final judgment. Rule 3(c) states that a notice of appeal "shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken." The rule also says that "[a]n appeal shall not be dismissed for informality of form ... of the notice of appeal." The conclusion that the technical requirements of Rule 3(c) should be liberally construed is bolstered by the Notes of the Advisory Committee, which counsel that "[d]ecisions under the present rules which dispense with literal compliance in cases in which it cannot be fairly exacted should control interpretation of these rules." When Rule 3(c) was amended in 1979, the Advisory Committee again emphasized "that the right to appeal [ought] not be lost by mistakes of mere form" and "that so long as the function of notice is met by the filing of a paper indicating an intention to appeal, the substance of the rule has been complied with."
 
 
 14
 Professors Wright and Miller have commented that "[d]efects in the wording of the notice of appeal are generally overlooked if the true intentions of the appellant can fairly be ascertained, if the courts have not been misled, and if the other parties have suffered no prejudice. The notice is not to be parsed on a technical basis; nor is the appellant to be deprived of his right to appeal because he has misspelled a party's name or misdesignated the court to which the appeal is being taken." (Footnote omitted.) Wright, Miller, Cooper & Grossman 16 Federal Practice & Procedure, Sec. 3949 p. 355 (1977).
 
 
 15
 In light of the principle that a technical shortcoming in a notice of appeal is not fatal when the appellant's intention can be discerned and the opposing party has suffered no prejudice, we are unwilling to hold that claimant's error deprived this court of appellate jurisdiction. Her notice of appeal stated that she was appealing the decision of the district court, and the Secretary conceded at oral argument that he suffered no prejudice from the error.
 
 
 16
 The Secretary also argues that by designating the date of the Rule 59 order and not the date of the district court's initial judgment, claimant failed to preserve for appeal the issues decided in the initial judgment. In this circuit, however, it "is well settled that an appeal from a final judgment draws into question all prior non-final rulings and orders." McLaurin v. Fischer, 768 F.2d 98, 101 (6th Cir.1985). The order addressing plaintiff's Rule 59 motion was the final judgment of the district court, and by designating that order claimant preserved for appeal all issues that had previously been ruled upon by the district court.
 
 III
 
 17
 Having resolved the jurisdictional issues, we turn to the merits of claimant's arguments. When Congress enacted Pub.L. 98-460 and ordered the Secretary to change the mental impairments listings regulations, it provided a specific remedy for people in claimant's situation:
 
 
 18
 "Any individual with a mental impairment who was found to be not disabled pursuant to an initial disability determination or a continuing eligibility review between March 1, 1981, and the date of the enactment of this Act [Oct. 9, 1984], and who reapplies for benefits under title II or XVI of the Social Security Act [this subchapter or subchapter XVI of this chapter], may be determined to be under a disability during the period considered in the most recent prior determination. Any reapplication under this paragraph must be filed within one year after the date of the enactment of this Act, and benefits payable as a result of the preceding sentence shall be paid only on the basis of the reapplication." Sec. 5(c)(3), Pub.L. 98-460. See 42 U.S.C.A. Sec. 421, Note.
 
 
 19
 Claimant does not deny that under the statute she had to reapply for benefits in order to have her disability considered under the new regulations. See Lichter v. Bowen, 814 F.2d 430 (7th Cir.1987). Rather, she suggests various reasons why the statute does not provide her adequate relief from the Secretary's failure to promulgate "correct" regulations initially. She asks us to use our equitable powers to remand her application for consideration under the new regulations.
 
 
 20
 Where Congress has provided a specific remedy, this court will not fashion an alternative remedy; to do so would displace congressional intent. Moreover, even if claimant's mental impairments were adjudicated under the regulations of claimant's choice, she would not qualify for benefits. Claimant argues in her brief that she qualifies under Listing 12.07, 20 C.F.R. Pt. 404, Sbpt. P, App. 1, because she has a "[m]arked restriction of activities of daily living." The ALJ specifically found, however, that claimant's daily activities are not significantly restricted. He stated:
 
 
 21
 "She cooks, does some household chores, and spends time crocheting, driving an automobile, going shopping, reading, watching television, and visiting."
 
 
 22
 The ALJ's observations were based on claimant's own testimony at the hearing and the report of Dr. Bracken, an osteopath; the ALJ's finding is supported by substantial evidence**
 
 IV
 
 23
 Claimant also challenges the ALJ's determination that her pain was not severe. She first argues that the ALJ could not discredit her complaints of pain as "inconsistent with her daily activities, which are not significantly restricted," because under 20 C.F.R. Sec. 404.1572(c) daily activities such as household chores and hobbies are not considered "substantial gainful activity." That regulation, however, involves the requirement that a person receiving benefits not be engaged in substantial gainful activity (see 20 C.F.R. 404.1520(b)); it does not mean that a person's capacity to do household tasks cannot be used in support of a factual finding that she does not have disabling pain.
 
 
 24
 Claimant next argues that the ALJ applied a "sit and squirm test" by relying on claimant's demeanor at the hearing. It is true that the ALJ relied in part upon claimant's demeanor, as he was entitled to do. He also relied upon other objective evidence. The ALJ observed that claimant's pain, whether real or self-imposed due to a psychological ailment, had not prevented claimant from participating in normal day-to-day activities. He noted that she takes minimal pain medication. He also examined the various psychiatric and psychological reports.
 
 
 25
 Finally, claimant argues that the ALJ did not consider that her pain is psychogenic. The ALJ conceded that claimant suffers from pain, but in light of the report from Dr. Ward, an orthopedist, he did not find it of such severity so as to prevent her from working. We see no legitimate basis for disturbing that conclusion.
 
 
 26
 The statements of Dr. Leach in a letter of August 30, 1983, indicate that claimant suffers from psychogenic pain, but they also provide support for the ALJ's finding that claimant's pain is not severe:
 
 
 27
 "I don't think that the back condition is causing her any problem. She sat very casually, with her legs crossed and leaning on the table, talking with me very casually. She was telling me how she was in constant pain, how her neck bothers her, her lower back bothers her and her tailbone bothers her and these all seem to alternate intermittently, first one and then the other.
 
 
 28
 "I then asked her what kind of work she did when she was working and she told me that it was sorting mail and she told me quite frankly that she was not going back to work. She said that she knows what sort of pain that she's been through the year and she just feels that she is not going to go back there and stir up her back and neck and tailbone because she knows that she can't take it and this will aggravate her back."
 
 
 29
 The claimant relies on a letter to her attorney from Dr. Goold, a psychiatrist, in which Dr. Goold states that claimant exhibits the presence of a psychogenic pain disorder. The ALJ properly discounted this statement in light of the generally exaggerated tone of the letter. For example, Dr. Goold was not presenting a complete picture of claimant's daily activities when he stated:
 
 
 30
 "When I inquire about household chores she states that if she were to run a sweeper 'I could be laid up for a couple of days after.' She drives only 'when I have to because it hurts from sitting in the car.' "
 
 
 31
 In spite of the advocatorial nature of the letter, it is noteworthy that Dr. Goold did not state that the claimant is disabled from working. We conclude that the ALJ's evaluation of claimant's pain is supported by substantial evidence.
 
 V
 
 32
 Claimant's final argument is that the ALJ erred in relying upon the "grids" and in failing to employ the testimony of a vocational expert once he had found that claimant was afflicted by both exertional and nonexertional disorders. See 20 C.F.R. Pt. 404, Sbpt. P, App. 2 Rule 200.00(e). In Damron v. Secretary of Health & Human Services, 778 F.2d 279, 282 (6th Cir.1985), this court held that "[t]he grid is not fully applicable when the claimant suffers from a nonexertional impairment;" once a claimant is shown to have severe restrictions not taken into account by the grids, Damron said, it is "incumbent upon the ALJ to hear from a vocational specialist to determine whether or not jobs existed in the national economy" that claimant could perform. Kimbrough v. Secretary of Health & Human Services, 801 F.2d 794, 796 (6th Cir.1986), clarified the holding in Damron by stating that an ALJ was not prevented from relying upon the grids where there was a "mere possibility of a nonexertional impairment.... Not even a minor nonexertional limitation is enough; the claimant must show an impairment that significantly limits his ability to do a full range of work at a designated level." In the present case, there is substantial evidence to support the ALJ's finding that claimant's mental impairment did not limit her ability to do a full range of sedentary work, and thus the ALJ was justified in relying upon the grids.
 
 
 33
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Charles M. Allen, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 **
 This court reviews the Secretary's denial of a claim to determine whether the Secretary's findings are supported by substantial evidence. 42 U.S.C. Secs. 1383(c)(3), 405(g). Substantial evidence means more than a mere scintilla of evidence, it means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). The evidence "must do more than create a suspicion of the existence of the fact to be established.... [i]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." National Labor Relations Board v. Columbian Enameling & Stamping Co., Inc., 306 U.S. 292, 300 (1939). Substantiality of the evidence must be based upon the record taken as a whole, Futernick v. Richardson, 484 F.2d 647 (6th Cir.1973), and in determining the question of substantiality of evidence, the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim. Whitson v. Finch, 437 F.2d 728, 732 (6th Cir.1971). The court "may not focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir.1978)