91 F.3d 144
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Barbara A. TAYLOR, Plaintiff-Appellant,
v.
COMMISSIONER OF SOCIAL SECURITY, Defendant-Appellee.
 No. 95-3767.
 United States Court of Appeals, Sixth Circuit.
 July 16, 1996.
 
 Before: MILBURN and SUHRHEINRICH, Circuit Judges; and ROSEN*, District Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Claimant Barbara A. Taylor appeals the district court's judgment affirming the Commissioner of Social Security's denial of her claim for disability and Supplemental Security Income ("SSI") benefits under 42 U.S.C. §§ 405(g) and 1383(c)(3). On appeal the issues are (1) whether the Appeals Council erred in finding that claimant could perform her past relevant work; (2) whether the Appeals Council erred in evaluating the claimant's subjective complaints of debilitating pain; (3) whether the administrative law judge ("ALJ"), Appeals Council, and magistrate judge erred in evaluating the consulting examination performed by Dr. Sheridan; (4) whether the Appeals Council and ALJ erred in finding that claimant's impairments, either singly or in combination, did not meet or equal the requirements of listing § 1.05(c); (5) whether the Appeals Council and district court erred in concluding that the opinions of Dr. Tobler were inconsistent; (6) whether the ALJ, Appeals Council, and district court erred, in the alternative, in failing to find that claimant was disabled for a closed period of disability lasting more than 12 months; and (7) whether, if this court determines that the ALJ's decision, not the decision of the Appeals Council, constitutes the final decision of the Commissioner, the ALJ's decision is not supported by substantial evidence. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Claimant applied for social security disability and SSI benefits on December 1, 1988, alleging that she became unable to work on September 15, 1986, due to a back impairment. After her applications were denied initially and on reconsideration, she requested a formal hearing before an ALJ.
 
 
 3
 A formal hearing was held on November 7, 1989. Following the hearing, the ALJ requested a consultative examination of claimant, which was performed by Dr. Richard Sheridan on January 11, 1990. Subsequently, the ALJ submitted interrogatories concerning claimant to a vocational expert ("VE"), Richard Garvin, who responded to the ALJ's interrogatories as well as to interrogatories submitted by claimant's attorney.
 
 
 4
 Thereafter, on July 9, 1990, the ALJ issued a decision denying claimant's application for benefits. Claimant appealed to the Appeals Council, which granted review of the ALJ's decision. On November 7, 1991, the Appeals Council issued its own decision finding that claimant was not disabled. The decision of the Appeals Council became the final decision of the Commissioner.
 
 
 5
 Pursuant to 42 U.S.C. § 405(g), claimant sought judicial review of the Commissioner's decision in the district court. The matter was referred to a magistrate judge, who issued a report and recommendation on May 25, 1994, recommending that the denial of benefits be upheld. Thereafter, the matter was referred to the magistrate judge for supplemental findings. On February 3, 1995, the magistrate judge issued a supplemental report and recommendation, again recommending that the denial of benefits to claimant be upheld. After de novo review, the district court issued an order on May 24, 1995, adopting the report and recommendation and supplemental report and recommendation and affirming the denial of benefits. This timely appeal followed.
 
 B.
 
 6
 Claimant was born on December 13, 1953. She was 35 years of age at the time of the hearing before the ALJ, and she had a GED diploma. She last worked full-time in September 1986.
 
 
 7
 She testified that she injured her spine in 1984 while working at a health club. She stated that she spends most of the day in bed, and is only out of bed for approximately three hours per day. Most of her time is spent caring for her young son.
 
 
 8
 Claimant testified that she is in constant pain, which reaches such severity that it makes her nauseous about twice a month and reduces her to tears approximately three times a week. She stated that following back surgery in March of 1989, she was recuperating well and, during a four to five week period, was able to ride a stationary bike. However, she testified that in April 1989 her legs suddenly "went out," and she is no longer able to ride the stationary bicycle. Claimant stated that at the time of the hearing, she was able to take care of her personal needs, although she needed help with her shoes, and that she performed some household chores, such as picking up the garbage and doing the laundry after someone carried the clothes to the washer.
 
 
 9
 Claimant was hospitalized on October 13, 1988, for complaints of lower back and left leg pain. A CT scan showed a herniated lumbar disc at L4-5. R. 132.
 
 
 10
 On October 20, 1988, claimant was admitted to the hospital for treatment of her herniated lumbar disc. On October 24, 1988, Dr. William Tobler, an orthopedic surgeon, performed a lumbar hemilaminectomy and bilateral diskectomy at L4-5. Claimant was discharged on October 27, 1988, with instructions to avoid heavy lifting and not to drive.
 
 
 11
 Claimant was again hospitalized on November 14, 1988, due to complaints of migraine headache. A magnetic resonance imaging scan (MRI) revealed a herniated cervical disc. Pain medication was prescribed and claimant was told to limit her activities to those that did not exacerbate her complaints of neck pain.
 
 
 12
 In a letter dated November 22, 1988, Dr. Tobler indicated that claimant underwent a lumbar laminectomy in October 1988. He also indicated that claimant was permitted to drive. R. 165. Another letter from Dr. Tobler, dated December 14, 1988, indicated that claimant had been disabled since October 1988, when he started treating her. He also indicated that she planned to have surgery for a herniated cervical disc in the near future and that she should be considered totally disabled until March 1, 1989.
 
 
 13
 Claimant was admitted to the hospital on January 9, 1989, for treatment of a herniated nucleus pulposus of her cervical spine. Dr. Tobler performed a cervical diskectomy and fusion at C5-6.
 
 
 14
 In a letter dated February 7, 1989, Dr. Tobler stated that he saw claimant in his office on February 2, 1989. He reported that the pain and numbness in her upper right extremity were gone and that she had some back stiffness and intermittent pain in the left thigh. He also indicated that she currently was taking no pain medication. R. 178.
 
 
 15
 In a subsequent letter, dated August 22, 1989, Dr. Tobler indicated that he saw claimant in his office on August 7, 1989. He indicated that claimant was totally disabled at that time and recommended, along with another physician, that claimant be enrolled in a rehabilitation program and "possibly a work hardening in a job that would not stress her spine." R.182.
 
 
 16
 Dr. Tobler completed a residual functional capacity assessment on October 24, 1989. He indicated that claimant was able to lift up to 35 pounds occasionally and ten pounds frequently. He stated that claimant was able to stand and walk for 30 minutes to one hour at a time and for five to seven hours in an eight-hour workday, and that claimant could sit for 30 minutes to one hour at a time and for four hours in an eight-hour workday. He further indicated that claimant could occasionally climb, stoop, kneel, balance, crouch, and crawl. She had no restrictions against reaching, handling, feeling, pushing, pulling, seeing, hearing, or speaking. Finally, he indicated that claimant had no environmental restrictions, except that she should avoid vibrations. R. 179-81.
 
 
 17
 In a letter dated November 2, 1989, Dr. William Easley, a chiropractor, stated that claimant was
 
 
 18
 completely and possibly irreparably disabled and [was] not able to perform even domestic activities and barely able to perform self-hygiene without assistance. Further, I doubt that she is able to care for her young son adequately due to her disability.
 
 
 19
 J.A. 187.
 
 
 20
 Dr. Richard Sheridan, an orthopedic surgeon, performed a consulting examination of claimant on January 11, 1990. As the result of his examination, Dr. Sheridan found moderate to severe lumbar paravertebral spasm and diagnosed chronic pain syndrome and a post-laminectomy syndrome, as well as a possible recurrent disc herniation at L4-5. Dr. Sheridan further stated that claimant had no complaints referable to her neck and upper extremities and that her primary complaints and positive physical objective findings were in the lumbar spine and lower extremities. R. 198.
 
 
 21
 In addition, Dr. Sheridan completed a residual functional capacities assessment of claimant. He indicated that claimant was occasionally able to lift ten pounds and frequently able to lift five pounds. He stated that claimant could stand, sit, or walk for 30 minutes at a time and for three hours in an eight-hour day. He also indicated that claimant could occasionally stoop, kneel, or balance but should never climb, crouch, or crawl. Dr. Sheridan further indicated that claimant's ability to reach, push, and pull were limited by her physical impairments and that she should avoid heights and vibrations.
 
 
 22
 In a letter dated August 14, 1991, Dr. Tobler indicated that he last saw claimant in his office on November 13, 1989. Dr. Tobler stated:
 
 
 23
 There might be some question as to the sincerity of her pain behavior as to whether or not she is really in that amount of pain....
 
 
 24
 Certainly at the time of [claimant's] last visit, I did not believe that she could handle 35 pounds on on (sic) occasional basis. I did not think that carrying 35 pounds occasionally, which means from very little, for even 10-15 minutes, or up to one-third of an 8 hour day would be impossible. Ten pounds is a very minimal amount of weight and again I did not think that was excessive.
 
 
 25
 R. 223-24.
 
 
 26
 The VE, Garvin, reviewed claimant's vocational reports and stated, in relevant part, that she had the following past work experience:
 
 
 27
 JOB TITLE SKILL LEVEL EXERTIONAL LEVEL
--------------- ---------------- ------------------
cashier checker semi-skilled medium
general cashier un-/semi-skilled sedentary-to-light
 
 
 28
 In response to a hypothetical that assumed that claimant was: (1) limited to lifting or carrying a maximum of 10 pounds, but only five pounds frequently; (2) must alternate between sitting and standing; and (3) was limited to reaching, pushing, and pulling up to five pounds repetitively, but could not climb, crouch, crawl, or work around heights or vibrations, the VE stated that claimant could perform her past relevant work as a cashier in a restaurant. R. 210. The VE also stated that
 
 
 29
 claiment [sic] should be able to perform the following jobs all of which require exertion at the Sedentary level: cashier, bookkeeping/accounting clerk, payroll/timekeeping clerk, billing/cost and rate clerk, order clerk, personnel clerk, receptionist/information clerk, teacher aide, office manager, supervisor--sales. There exist 27,000 of these positions at the local level and over eight million on the national level.
 
 
 30
 R. 210. Finally, in response to claimant's interrogatories, the VE admitted that a transcript of claimant's testimony concerning her pain and activities was not part of the evidence provided to him by the ALJ. R. 213.
 
 II.
 A.
 
 31
 Claimant first argues that the ALJ and the Appeals Council erred in finding that her impairments did not meet or equal the requirements of listing § 1.05(c).[1] Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971). Where the Appeals Council denies review of the ALJ's decision, the ALJ's decision becomes the decision of the Commissioner. However, "[i]n a case ... where the findings of the [ALJ] and the Appeals Council are in conflict, the question before us is whether substantial evidence supports the Appeals Council's decision[2]." Johnson v. Secretary of Health and Human Servs., 948 F.2d 989, 992 (6th Cir.1991) (citing Mullen v. Bowen, 800 F.2d 535, 546 (6th Cir.1986) (en banc)). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). "A social security disability claimant bears the ultimate burden of proof on the issue of disability." See Richardson v. Heckler, 750 F.2d 506, 509 (6th Cir.1984). Once a claimant makes out a prima facie case that she cannot perform her usual work due to her disability, the burden of proof then shifts to the Commissioner to show that there is work in the national economy which the claimant can perform. Martonik v. Heckler, 773 F.2d 236, 239 (8th Cir.1985); Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). The Commissioner must prove that having considered the claimant's present job qualifications, such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to perform a different kind of job. See Young v. Secretary of Health & Human Servs., 925 F.2d 146, 148 (6th Cir.1990). Where a VE is consulted, the VE's testimony must be based on a hypothetical question which accurately portrays the claimant's physical and mental impairments. See Varley v. Secretary of Health & Human Servs., 820 F.2d 777, 779 (6th Cir.1987).
 
 
 32
 In this case, the findings of the ALJ and Appeals Council that claimant has not satisfied the requirements of listing § 1.05(c) are supported by substantial evidence. In its decision, the Appeals Council stated that in order to meet the requirements of § 1.05(c), "the claimant would have to manifest sensory abnormalities and motor loss in a specific radicular pattern, which she does not." R. 7. The Appeals Council also noted that "there are no findings in the record of other abnormalities which would be equivalent to the severity of those listed in section 1.05(C)." Id. Although the CT and MRI scans of claimant's spine showed cervical and lumbar disc herniation, and she demonstrated muscle spasm and a limited range of motion in her back on several occasions, claimant did not demonstrate significant motor loss with muscle weakness, sensory loss, and reflex loss. See Hale v. Secretary of Health & Human Servs., 816 F.2d 1078, 1082 (6th Cir.1987) (per curiam) (stating that the regulations require "evidence of progressive or ongoing neurological abnormalities" for listing § 1.05(c) to be satisfied).
 
 
 33
 Moreover, contrary to claimant's assertions, Dr. Sheridan's consulting report does not support a finding that she met or equalled the requirements of listing § 1.05(c). In his report, Dr. Sheridan stated that his examination of claimant revealed that "[s]he has no sensory abnormality to light touch or pinwheel pinprick in either lower extremity.... Vibratory and proprioceptive sensation are intact and symmetrical bilaterally." R. 197. Dr. Sheridan also stated that he did "not detect any motor weakness in muscle groups tested in the lower extremities." Id. Since listing § 1.05(c) requires significant motor loss with muscle weakness, sensory loss, and reflex loss, Dr. Sheridan's finding of no motor weakness cannot be substantial evidence in support of a finding that listing § 1.05(c) has been satisfied.
 
 
 34
 Further, contrary to claimant's assertion, there is no evidence that claimant's combined impairments equalled the listing. Neither claimant's lower back or neck impairment showed signs that would satisfy the listing. Rather, the evidence, particularly the results of Dr. Sheridan's examination, R. 196, shows that after her cervical diskectomy in January 1989, the condition in claimant's upper extremity improved significantly.
 
 
 35
 Finally, claimant's assertion that because she came close to meeting the requirements of listing § 1.05(c), the ALJ or Appeals Council should have obtained the opinion of a medical advisor or expert as to whether she satisfied listing § 1.05(c) is meritless. As is discussed above, claimant has submitted no evidence which shows that her back and neck impairments, either singly or in combination, came close to satisfying listing § 1.05(c). Thus, there was no need for a medical advisor.
 
 B.
 
 36
 Claimant argues that the Appeals Council erred in finding that she could perform her past relevant work as a cashier because the exertional level of that work was above the level at which she could perform. In its decision, the Appeals Council stated that the ALJ
 
 
 37
 found that the claimant has the residual functional capacity to perform work requiring frequent handling of 5 pounds and occasional handling of 10 pounds ... [and] concluded that the claimant is unable to perform her past relevant work as business manager, pre-school teacher, cashier-checker, and hand packager, but that she is able to perform her past relevant work as a general cashier; and that there are also other jobs in the national economy which she can perform, existing in significant numbers.
 
 
 38
 R. 6. The Appeals Council then stated that it "agrees with and hereby adopts the [ALJ's] findings in these regards...." Id.
 
 
 39
 In this case, the VE stated that claimant's prior jobs as an exercise consultant, preschool teacher, and packager were beyond her residual functional capacity because they involved significant lifting. The VE stated, however, that based upon her residual functional capacity, claimant could perform her past relevant work in a restaurant.
 
 
 40
 Claimant asserts that the Appeals Council erred in finding that she could perform this past relevant work because it was performed more than 15 years ago, may not have lasted long enough for her to learn it, and was medium, not sedentary, work. Claimant also asserts that because the VE was not present at the administrative hearing, he was not familiar with her testimony describing her past relevant work. Claimant testified that her duties as a cashier involved opening the restaurant, acting as a hostess to seat customers, and acting as a cashier. R. 49-50. She also testified that there was no lifting involved in the work.
 
 
 41
 Contrary to claimant's arguments, substantial evidence supports the Appeals Council's finding that she could perform her past relevant work as a cashier in a restaurant. Moreover, even if we were to assume that claimant could not perform her past relevant work as a cashier in a restaurant, substantial evidence would support the Appeals Council's finding that, within her residual functional capacity, there exist a significant number of jobs in the local and national economy which she could perform.
 
 
 42
 In order to show that her impairments are so severe that she cannot return to her past relevant work, a claimant must prove "an inability to return to h[er] former type of work and not just to h[er] former job." See Studaway v. Secretary of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir.1987) (quoting Villa v. Heckler, 797 F.2d 794, 798 (9th Cir.1986)). In his response to the ALJ's interrogatories, the VE explicitly stated that "claiment [sic] could perform her past job as a cashier in a restaurant." R. 210. Further, claimant's description of her job is consistent with the VE's characterization of it as involving sedentary to light work. In her testimony, claimant admitted that the job did not involve any lifting, but involved seating people in the restaurant and working as a cashier.
 
 
 43
 Furthermore, claimant stated, in a vocational report, that she performed her job as a cashier in a restaurant from September 1976 to March 1977. Thus, at the time of the hearing before the ALJ, which occurred in November 1989, the job was not performed more than 15 years before the period in issue. Further, claimant performed this job for more than six months, and there is no evidence that she failed to learn the job.
 
 
 44
 Moreover, the record provides substantial evidence to support an alternative finding that even if claimant were unable to perform her past relevant work, she could perform a significant number of jobs in the national and local economies which would accommodate her residual functional capacity and vocational profile. In his response to the ALJ's interrogatories, the VE identified approximately 27,000 sedentary jobs in the local economy and eight million sedentary jobs in the national economy which claimant could perform given her residual functional capacity and vocational profile. R. 210. This evidence provides an alternative basis for finding that claimant was not disabled by her impairments.
 
 C.
 
 45
 Claimant argues that the Appeals Council erred in finding that her subjective complaints of pain were not credible. In its decision, the Appeals Council found that claimant's "testimony with respect to the severity and extent of her illness and pain is not fully credible," R. 8, and stated that her counsel argued
 
 
 46
 that the [ALJ's] finding that the claimant's complaints of pain were not fully credible is not supported by any evidence in the file. In assessing the credibility of the claimant's subjective complaints, the [ALJ] discusses her use of medication and her daily activities, which were not inconsistent with the residual functional capacity found by the [ALJ]. The Council also note[d] that Dr. Tobler's recent letter questions the credibility of the claimant's pain allegations.
 
 
 47
 R. 7.
 
 
 48
 This court has developed a two-pronged standard for analyzing a claimant's assertions of disabling pain:
 
 
 49
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 50
 Felisky v. Bowen, 35 F.3d 1027, 1038-39 (6th Cir.1994) (quoting Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986)). In this case, the record establishes underlying conditions in claimant's neck and back that could support complaints of disabling pain. However, this does not mean that either the ALJ or the Appeals Council was bound to accepts claimant's own testimony as to her symptoms as credible. Cohen v. Secretary of Dep't of Health & Human Servs., 964 F.2d 524, 529 (6th Cir.1992).
 
 
 51
 In assessing claimant's complaints of disabling pain, the Appeals Council and the ALJ, were entitled to consider the lack of various objective neurological findings which generally accompany debilitating pain. See, e.g., Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir.1986) (noting that muscle spasm or atrophy, reflex abnormality, or loss of sensation are some of the many findings as part of neurological examinations which normally accompany complaints of severe pain.). In this case, Dr. Sheridan found normal sensory functions and no motor loss in the lower extremities as the result of his consulting examination of claimant. Further, Dr. Tobler found that claimant had "excellent testing on motor function, reflexes and sensory examination of the upper extremities," R. 167, and in his letter of August 1991, he questioned "the sincerity of her pain behavior as to whether or not she is really in that amount of pain." R. 223.
 
 
 52
 Further, although claimant challenges the Appeals Council's credibility determination by stating that "the Appeals Council referred to the finding of the ALJ that the claimant was not credible based on her use of medications and her daily activities," Appellant's brief at 11-12, the Appeals Council did not rely on claimant's use of medications and her daily activities in isolation. Rather, as the Appeals Council stated, the use of medications and claimant's daily activities were two of the factors used to determine her credibility. Furthermore, the ALJ and the Appeals Council were entitled as a matter of law to consider claimant's household activities and use of medications in evaluating her complaints of disabling pain. Blacha v. Secretary of Health & Human Servs., 927 F.2d 228, 231 (6th Cir.1990) (per curiam).
 
 
 53
 Additionally, in his letter of August 1991, Dr. Tobler indicated that he had not seen claimant since November 1989, and he questioned the severity of the pain she was experiencing, "particularly if she has continued to live without seeking further surgical resolution of her symptoms." R. 223-24. See Blacha, 927 F.2d at 231 (claimant's failure to seek treatment undercuts his claims of severe pain). Accordingly, we conclude that the Appeals Council's finding that claimant's complaints of severe pain were not credible is supported by substantial evidence.
 
 D.
 
 54
 Claimant argues that the ALJ, the Appeals Council, and the magistrate judge erred in evaluating Dr. Sheridan's consulting examination of claimant. Specifically, she asserts that "[o]nce the ALJ requested this consultative examination, he was not free to ignore the results, especially when this exam was the last medical evidence in the file of examination or testing done on the claimant." Appellant's Brief at 18. Claimant further asserts that in his report and recommendation, the magistrate judge "erroneously tried to deal with this by stating that he was giving more weight to the information from Dr. Tobler ... than to the report of Dr. Sheridan." Id.
 
 
 55
 "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir.1988) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 536 (6th Cir.1981)); Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980); Whitson v. Finch, 437 F.2d 728, 732 (6th Cir.1971)). However, the Commissioner is not bound by conclusory opinions of a treating physician, and opinions of the treating physician are entitled to "great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir.1993) (citing Young v. Secretary of Health & Human Servs., 925 F.2d 146, 151 (6th Cir.1990)).
 
 
 56
 A consultative examination, performed on a one-time basis is not substantial evidence in comparison to competent evidence from a treating physician. See Hurst v. Schweiker, 725 F.2d 53, 55 (6th Cir.1984) (per curiam). "Ultimately, the determination of disability is the prerogative of the [Commissioner]...." See Houston v. Secretary of Health & Human Servs., 736 F.2d 365, 367 (6th Cir.1984)).
 
 
 57
 Thus, the Commissioner was not bound by the consulting physician's opinion. In this case, Dr. Sheridan stated that claimant was able to lift between five and ten pounds, stand or walk for three hours total during an eight-hour day and sit for three hours total during an eight-hour day. Dr. Sheridan also reported essentially normal neurological findings and normal muscle strength in the upper and lower extremities, which are similar to the findings of Dr. Tobler. Here, given the fact that the objective findings of Drs. Tobler and Sheridan were not significantly different, the Appeals Council had a reasonable basis for according greater weight to the opinion of Dr. Tobler, a treating physician, than to Dr. Sheridan, who performed a one-time consulting examination.
 
 E.
 
 58
 Claimant also argues that the Appeals Council and the district court erred in finding that some of the opinions expressed by Dr. Tobler were inconsistent. As noted previously, Dr. Tobler, claimant's treating physician, stated that claimant was able to lift up to 35 pounds occasionally and ten pounds frequently. He stated that claimant was able to stand and walk for 30 minutes to one hour at a time and for five to seven hours in an eight-hour workday. Dr. Tobler later revised his estimate as to claimant's ability to lift and stated that he did not think that 10 pounds was an excessive amount of weight for her to lift. This is consistent with the Appeals Council's residual functional capacity finding that claimant was able to perform work which permitted her to alternate between sitting, standing, and walking and did not require frequent handling of more than five pounds or occasional handling of more than 10 pounds; reaching, pushing and pulling more than five pounds; or climbing, crouching, crawling, and working near heights or vibration.
 
 
 59
 Further, Dr. Tobler's assessment is consistent with his own objective medical evidence, as well as the other objective medical evidence of record. Moreover, although Dr. Tobler stated on two occasions that claimant was disabled, the Appeals Council was entitled to give less weight to these opinions. These statements were inconsistent with and contradicted Dr. Tobler's residual functional capacity assessment that claimant could perform a limited range of work activity, and they were set forth in letters and, thus, were less detailed, unsupported, and conclusory as compared to Dr. Tobler's other opinions.
 
 
 60
 Finally, contrary to claimant's assertion, Dr. Tobler did not repudiate his residual functional capacity assessment in his August 1991 letter. Although Dr. Tobler did revise his lifting restriction from 35 to ten pounds, he did not state that claimant was disabled in his August 1991 letter, and his other statements tend to explain, not repudiate, both his earlier residual functional capacity assessment and his subsequent revision.
 
 F.
 
 61
 Claimant also argues that the ALJ, the Appeals Council, and the district court erred in not finding that she was entitled to a closed period of disability lasting for at least 12 consecutive months under 20 C.F.R. § 404.1505(a). Claimant asserts that because the onset date of her disability was September 15, 1986 and she did not undergo back surgery until October 1988 and neck surgery until January 1989, her disability lasted more than 12 consecutive months.
 
 
 62
 However, the medical evidence does not support a finding that claimant was entitled to benefits for a closed period of disability. The medical evidence shows that between the alleged onset date of claimant's disability in September 1986 and September 1988, no physician stated that she was disabled. Indeed, the evidence does not reflect that claimant received medical treatment for either her back or neck from November 1986 to September 1988. Further, in his letter of December 1988, Dr. Tobler did state that claimant was totally disabled in October 1988 and would be totally disabled until March 1, 1989. R. 166. However, in office notes dated March 13, 1989, Dr. Tobler stated that claimant was "going to have to find a job that allows her to live within the limitations of pain and disability that [her] problems have opposed (sic) upon her." R. 167. In October 1989, Dr. Tobler completed the residual functional capacity assessment form discussed above. R. 179-181. This assessment form, completed approximately one year after claimant's back surgery and approximately nine months after her neck surgery, is inconsistent with a finding of total disability. Accordingly, we conclude that the Commissioner did not err in not awarding claimant disability benefits for a closed period of disability.
 
 G.
 
 63
 Claimant also argues, in the alternative, that should this court determine that the ALJ's decision is the final decision of the Commissioner, the ALJ's decision was not supported by substantial evidence. We need not address these arguments. First, we have determined that the decision of the Appeals Council constitutes the final decision of the Commissioner. Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir.1986) (en banc). Second, the arguments raised by claimant are reiterations of the issues discussed above, which claimant raised with regard to the decision of the Appeals Council.
 
 III.
 
 64
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Subsection (C) of section 1.05, the disorders of the spine provision, provides:
 C. Other vertebrogenic disorders (e.g., herniated nucleus puplosus (sic), spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
 
 
 [1]
 Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 [2]
 Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss
 
 
 [20]
 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.05C
 
 
 [2]
 Thus, in this case, the decision on review is the decision of the Appeals Council since the Appeals Council granted review of the ALJ's decision and the decision of the Appeals Council is the final decision of the Commissioner. However, although the Appeals Council granted review of the ALJ's decision, the Appeals Council's decision is the same as the ALJ's decision in all essential respects and the Appeals Council's decision relies on and adopts the ALJ's findings in many instances. Therefore, where the Appeals Council adopted or relied on the findings of the ALJ concerning an issues, the appeal of that issue involves the findings of both the ALJ and the Appeals Council, and the substantial evidence standard of review applies applies to the findings regardless of whether they were made by the Appeals Council, the ALJ, or were made by the Appeals Council in reliance on the ALJ's findings